**FILED**

Mar 01 2022

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY          s/ shellyy          DEPUTY

1  HUNG DUONG NGUON
2  K-49649, C-15-216
   RJD Correctional Facility
3  480 Alta Road
   San Diego, CA 92179
4  PRO SE
5
6                    UNITED STATES DISTRICT COURT
7                 SOUTHERN DISTRICT OF CALIFORNIA
8
9  HUNG DUONG NGUON,                    Civil Case No. 21-cv-02113-CAB-JLB
10                       Plaintiff,     Complaint under the Civil Rights Act #2 U.S.C.
11             v.                       §1983; Demand for Trial pursuant to Fed. R. Civ. P.
                                        16 and Jury demand under Rule 38(b) Fed. R. Civ. P;
12  MARY ANN GLYNN, STEVEN ROBERTS, JOHN HODGES,   Request for emergency Preliminary Injunction; ~Motion
    RYAN BARENCHI, TRI THANH LUU, JOHN KWOK-WAH CHAO,   for emergency Relief from General Order 766, 667~
13  ERICA JANNA GOYAL CORLEONE, JASON SILVA, AMIR
14  MOHAMED, ERIC P. HOFMEISTER, B. BROWN, R. WATERS et al.
                         Defendants.
15
16  I. Nature of Action
17        1.        Plaintiff is a state prisoner who have been seriously injured because of defendants'
                               medical needs
18  deliberate indifference to his serious ~which~ which resulted in further significant injury and caused unnecessary and wanton

19  infliction of pain that has no penological benefits whatsoever. This violation further lead to violating the cruel and

20  unusual punishment clause of the Eighth Amendment, as is enforceable under the equal protection of the Law clause

21  in the Fourteenth Amendment to the U.S. Constitution. Plaintiff also alleges the Torts of personal injury-medical,

22  American with disabilities, Torts fraud, breach of contract, and medical malpractice, intentional infliction of emotional

23  distress. These unconstitutional acts have caused harm, including severe and unnecessary pain, injury and near death.

24        2.        Plaintiff seek compensatory damages in the amount of one point seven million

25  dollars ($1,700,000.°°), and for actual damages in the amount of five hundred thousand dollars ($500,000°°)

26  and for consequential damages in the amount of one million dollars ($1,000,000.°°), and for continuing

27  damages in the amount of six hundred thousand dollars ($600,000.°°), and for criminal damages in the

28  amount of nine hundred thousand dollars ($900,000.°°), and for direct damages in the amount of

                                        -1-

1  three hundred thousand dollars ($300,000.⁰⁰), and for exemplary or punitive damages in the
2  amount of six million dollars ($6,000,000.⁰⁰), and for accumulative damages in the amount of two
3  million dollars ($2,000,000.⁰⁰), and other monetary damages in an amount to be determined at trial.
4  II. Jurisdiction

5      3.       The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343,
6  1343(a)(3), 1367, 1391(b), 1346(b), 1402(b), 2671, 2680, 2679, 2675(a), 2679(b)(2)(A); 42 U.S.C. §§1983,
7  12101, 2331(1), 1985; 18 USCS §2442; Cal Gov Code §845.6; 10 USCS §855; Cal Bus & Prof Code §2290;
8  Cal Code Civ Proc §§427.10(b), 428.10, 428.30, 427.10, 3045.1; USCS Const. Amend. 8 standard 584;
9  USCS Const. Amend. 14; Cal Const, Art. 1817; 15 CCR 83271; CCP 8335.1; Fed. R. Civ. P. 9(b). Plaintiff
10 seek declaratory and injunctive relief under 28 U.S.C. §§1343, 2201 and 2202, and 42 U.S.C.
11 §§1983 and 12101 et seq.

12 III. Venue
13      4.       Venue is proper under 28 U.S.C. §1391(b), because a substantial part of
14 events giving rise to plaintiff's claims occurred within the Southern District of California.

15 IV. Intradistrict Assignment
16      5.       Actions giving rise to venue of this case in the Southern District of California
17 occurred in San Diego County. Accordingly, pursuant to Local Rule 3-2(c), this case arises in the San
18 Diego Division.

19 V. Parties
20      A. Plaintiff
21          (1)Hung Duong Nguon
22      6.       Plaintiff Hung Duong Nguon is a prisoner incarcerated at Richard J. Donovan
23 Correctional Facility ("RJD" or "RJDCF") at San Diego, California. Defendants were deliberate indifference
24 to his serious medical needs which resulted in further significant injury and caused unnecessary and wanton
25 infliction of pain.

26      7.       On September 1, 2020, plaintiff filed a Health Care Grievance CPCR 602 HC against
27 defendant Mary Ann GLYNN, CEO(chief executive officer at RJD Health Care Department) Upon information and
28 belief, defendant GLYNN personally involved herself in violating Plaintiff's right to adequate medical care

-2-

1  by instituting a toxic environment of Redirecting medical doctors under her leadership to practiced
2  deliberate indifference to Plaintiff's serious medical needs.

3      8.      Let us go back to the beginning where many other defendants' deliberate
4  indifference to plaintiff's serious medical needs that led to defendant GLYNN involvement. Plaintiff
5  first arrived at RJPCF on 12-20-2019. Upon arrival registered nurse L. Javier informed Plaintiff
6  that he will be seen by a medical doctor within 5-day per policy of RJD.

7      9.      On December 26, 2019, plaintiff filed a CDCR 602 complaining of medical
8  doctors' deliberate indifference to his serious medical needs due to the fact he did [not] see a
9  medical doctor within 5-day per institutional policy; which further brought unnecessary pain and suffer-
10 ings as his painkiller Tramadol was cut-off abruptly because he didn't get to see the doctor to
11 have it renew.

12      10.     On December 27, 2019, plaintiff went to MD-line and saw defendant Erica
13 Janna Goyal CORLEONE, M.D. which she deprived medical care that's in par to community standard
14 of care that respectable professional opinion regards as within the range of appropriate treatment, thus,
15 give rise to Plaintiff's medical condition getting worse that resulted in further significant injury and
16 severe pain. Plaintiff had no other choice but to filed a 602 against defendant CORLEONE on
17 January 9, 2020.

18      11.     Defendant CORLEONE lied and fabricated on CDCR documents that
19 plaintiff don't have compression fractured of the spine and lumbar spine scoliosis in order for her to
20 denied treatments altogether. Whereas a handful of medical doctors confirmed that Plaintiff do have
21 compression fractured of the spine and lumbar spine scoliosis.

22      12.     Defendant CORLEONE failured to treat resulted in further significant
23 injury and the unnecessary and wanton infliction of pain. Plaintiff severe chronic back pain left
24 untreated, which defendant CORLEONE knew or should have known the pain only get worse over time. And
25 it has. Sudden pain that's so bad that it is hard for plaintiff to move; and sometimes plaintiff's back
26 gave out which causes him to fall hard to the ground. Plaintiff gradual loss of height continue, causing
27 further pain as the back collapses upon itself. Numbness, tingling, and weakness in the back and legs get
28 worst, which further caused pain when Plaintiff stand, walk, sit, or bend. At times plaintiff can't even

1  control his bladder or bowels.

2          13.          Scoliosis cannot be cured, and it definitely does not go away by itself.

3  Defendant Armyn Ferrer-SAZON, RN (registered nurse), upon information and belief, had numerous

4  opportunities to intervene and see to it plaintiff receive adequate medical care, but she elected to

5  stand by and aided and abetted a handful of defendant medical doctors who acted with deliberate

6  indifference to plaintiff's serious medical needs. Defendant SAZON rejected twice to process the

7  602 against defendant CORLEONE by claiming it's a duplicate when it is not.

8          14.          We will come back to defendant SAZON again when more and more

9  602's are address.

10         15.          On January 6, 2020, plaintiff went to MD-Line again, and this time saw

11  defendant John Kwok-Wah CHAU, M.D., whereupon he engaged in deliberate indifference to plaintiff's

12  serious medical needs. Defendant CHAU uphold the lied and fabrication of CDCR documents in con-

13  junction with defendant CORLEONE, which forced Plaintiff to filed a 602 against defendant CHAU

14  on January 23, 2020.

15         16.          Plaintiff do have pain that's radiculopathy, but defendant CHAU lied

16  and fabricated on CDCR documents that— "chronic back pain without radiculopathy," in order to

17  denied Morphine, CT-scan, and MRI as plaintiff requested. Defendant CHAU further deleted "Lumbar

18  spine scoliosis" from the "Promblem list" that shows ongoing medical problems. Plaintiff did [not]

19  denied bilateral lower extremity radicular pain, saddle anesthesia, bilateral paresthesias, lower urinary

20  tract symptoms, bowel or bladder dysfunction. Defendant CHAU further lied that plaintiff had no acute

21  distress and no grimacing noted. One lied after another just so defendant CHAU can endorse his

22  denial of treatment altogether.

23         17.          UC Davis Hospital medical doctors who specializes in spine problems con-

24  firmed plaintiff do have chronic-appearing vertebral body height loss at multiple levels, including L2, L3,

25  L4, and L5. And multilevel disc degeneration, most pronounced at L5-S1. Dr. Jonathan Robert Young, M.D.,

26  Dr. Mack Er Rad, M.D., and Dr. Sukhraj S. Kahlon, M.D. contributed to these findings. Dr. Kahlon further

27  reported, "...chronic-appearing body height loss at multiple levels, including T7 and T8. There is multi-

28  level disc degeneration within the Thoracic spine. There are hypodense foci within multiple vertebral

1  bodies, including T9 and T11 with coarsened trabeculae, possibly representing osseous hemangiomas.

2  18. On January 1st, 2020, Plaintiff saw defendant CHAU for a Reasonable Accommo-

3  dation Request CDCR 1824 that plaintiff filed, and now interviewed by defendant CHAU. Plaintiff did

4  not denied decubitus ulcer in the buttocks or sacrum area. Plaintiff did not denied pressure sores.

5  Plaintiff did not agreed to the treatment plan of defendant CHAU who denied every requests that

6  plaintiff asked for. There seem to be no end in sight how much lies and falsifying on CDCR documents

7  defendant CHAU continue to participated in without even a qualm of guilt.

8  19. Dr. Darby Dickton, DO at UC Davis Hospital was one of the main doctor who

9  witnessed herself that Plaintiff have multiple back problems — from the thoracic vertebrae down to

10  the lumbar vertebrae and even lower still to the sacral vertebrae. Dr. Lisa Diane Mills, M.D.

11  authorized MRI of the L-Spine and concurred with her colleagues findings and diagnosis. Facet arthro-

12  pathy at the L2-L3. Diffuse disc bulge with intervertebral disc height loss at L3-L4. Bilateral facet

13  arthropathy with small left facet joint effusion at L4-L5. Focal protrusion with small annular fissure

14  into the right lateral recess, producing minimal mass effect on the right S1 root at L5-S1. Dr. Benjamin

15  Owen, M.D. preliminarily reported these disturbing findings. Dr. Richard Latchaw, M.D. finalized

16  Dr. Owen's report and agreed one hundred percent. UC Davis Hospital further study indicated positive

17  for back pain and positive for weakness, which corroborated with plaintiff's back giving out from time

18  to time where he fall hard to the ground, resulting in further significant injuries and caused unnecessary

19  and wanten infliction of pain.

20  20. On March 2, 2020, plaintiff went to MD-Line and saw defendant Gina

21  CASIAN, M.D. who acted with deliberate indifference to plaintiff's serious medical needs by following

22  footsteps of defendants CORLEONE and CHAU in lying and fabricating on CDCR documents. Defendant

23  CASIAN's findings: "The gross alignment of the spine is within normal limits." She refuses to believe

24  plaintiff have serious back problems that caused him to fall multiple times. Tylenol and capsaicin cream does not

25  work, but defendant CASIAN don't care and don't give a damn.

26  21. Again defendant SAZON rejected twice to process 602 against defendant

27  CHAU by claiming it's a duplicate to #9 CDCR 602 when it is not. Defendant SAZON aided and abetted

28  defendant CORLEONE at ¶13, and now she's doing it again at ¶21.

22.    Plaintiff on February 10, 2020 filed a 602 against defendant SAZON and the Health Care Grievance Office staffs for denying plaintiff's right to file appeals against defendant CORLEONE and defendant CHAU. Defendant SAZON abused her authority and rejected to process the 602 in an effort to protect defendants CORLEONE and CHAU.

23.    On December 31, 2019, plaintiff filed a Reasonable Accommodation Request CDCR 1824. Explaining of the stuffs he cannot do because of the serious back problem that he has. Plaintiff requested to see an orthopedic so he may receive treatments for his multiple back problems. Steroid injections once a month for 3-month. Egg-crate mattress. Functional capacity: No full duty chrono. Medical risk: High risk classification. Prescription of Morphine 30 mg mx/day for 90-day.

24.    Defendant F. ARMENTA who's an Associate Warden ADA Coordinator have a fiduciary duty to ensure plaintiff receive adequate medical care, but instead defendant ARMENTA personally involved in decision regarding plaintiff treatments by aiding and abetting defendant medical doctors who acted with deliberate indifference to plaintiff's serious medical needs.

25.    Licensed physical therapist Loretta Shepherd on March 20, 2019 documented plaintiff have scoliosis with gross thoracic kyphosis. She further reported Plaintiff have spasm in thoracolumbar paraspinals. Dr. Jalal Sottanian-Zadeh, physician & surgeon confirmed on 4-3-2018 that plaintiff do have lumbar spine scoliosis. Dr. Aliazghar Mohyuddin, physician & surgeon confirmed on 6-14-2017 that plaintiff do have pain. It is severe pain that plaintiff suffered all day and night, day after day for years.

26.    The RAP Meeting date took place on 1-16-2020, upon information and belief, defendant K. APRIAN could have intervened and should have intervened, but instead APRIAN aided and abetted defendants medical doctor who acted with deliberate indifference to plaintiff's serious medical needs, which resulted in further significant injury and caused unnecessary and wanton infliction of pain and suffer-ings. "No interim accommodation required," which denied everything plaintiff requested at ¶23 at line 7-9.

27.    On January 28, 2020 defendant SCHULTZ illegally engaged in fraud by heavily redacted report of X-Ray examination in order to aid and abet defendant medical doctors who has acted with deliberate indifference to plaintiff's serious medical needs. Defendant SCHULTZ stated several

-6-

1 times that plaintiff bone and spine is "within normal limits." Then SCHULTZ diagnosed it as
2 "mild degenerative spondylosis," which is similar to arthritis. Plaintiff's back problems is not normal at all
3 when we take a look at PP 17, 19, and 25.

28. When the diagnosed of Plaintiff's sixteen different back problems are
5 changed to a simple matter of spondylosis or arthritis, plaintiff request for a "back brace" is denied,
6 and strong painkiller medication Morphine is denied. A handful of defendants medical doctor and nurse
7 tells plaintiff: "All you have is arthritis. We do not provide "back brace" or Morphine for people with
8 arthritis." The denied goes further into other areas: (1) Defendants denied to refer plaintiff to see the
9 orthopedic specialist/surgeon for back problems, (2) Defendants denied plaintiff a full spine MRI and CAT-
10 scan, (3) Defendants denied the existency of plaintiff ever having scoliosis and compression fracture of the
11 spine, (4) Defendants denied to send plaintiff to a physical therapist for over a year; and (5) Defendant
12 denied the existency of plaintiff having severe chronic back pain throughout his whole back.

13 29. Plaintiff have tried numerous painkiller medications and creams: (1) Motrin,
14 (2) Ibuprofen, (3) Salicylate, (4) Acetaminophen, (5) Naproxen, (6) Aspirin, (7) Tylenol, (8) Salsalate, (9) Aleve, (10) Celecoxib
15 (Celebrex), (11) Advil, (12) capsaicin topical cream, (13) Lidocaine topical cream (Lidoderm), (18) Ketorolac injection
16 (Toradol), (15) Meloxicam, (16) Tylenol #3 (with Codeine), (17) Gabapentin (Neurontin), (18) Methadone,(19) Morphine, and
17 (20) Fentanyl. Oven long usaged of these medications, none of them work effectively to alleviate plaintiff's
18 severe chronic back pain other than Morphine or Fentanyl. According to CPHCS Pain Management guideline,
19 Plaintiff is suppose to be on Morphine for his chronic severe back pain. Defendant medical doctors classified
20 Plaintiff chronic back pain as "mild," and prescribed him Acetaminophen, which does [not] alleviate his severe
21 chronic back pain at all. UC Davis Health medical doctors recommended for plaintiff to be on Gabapentin to
22 treat his neuropathic pain; but defendants medical doctor numerous times told plaintiff that he does
23 not have neuropathic pain or any pain at all other than arthritis pain. Therefore, defendant medical
24 doctors goes against the CPHCS Pain Management guideline, and completely disregard UC Davis Health
25 medical doctors recommendation of Gabapentin.

26 30. On March 25, 2020 defendant Beverly BELTRAN wrote on "Progress Notes":
27 "I/P scheduled on RN line for 7362 c/o unresolved chronic LBP." Plaintiff submitted a handful of CDCR
28 7362 forms complaining of his multiple back problems to a handful of defendant medical doctors: (1) Dr. Gail

1  MESSLER, M.D., (2)Dr. David CLAYTON, M.D., (3)Dr. David GULDSETH, M.D., (4)Dr. Amir MOHAMED,M.D.,

2  (5)Dr. John HODGES, M.D. CPAP, (6)Dr. Steven ROBERTS, M.D., (7)Dr. Ryan BARENCHT, M.D., (8)Dr. Michael Balbin

3  SANTOS, M.D., (9)Dr. Tri Thanh LUU, M.D., etc. Defendants personally involved themselves in decisions

4  regarding plaintiff treatment, which they've acted with deliberate indifference to plaintiff's serious medical

5  needs resulting in further significant injuries and caused unnecessary and wanton infliction of pain.

6        31.    Numerous times plaintiff's severe chronic back pain completely gave out

7  because its already weakened, which causes plaintiff to fall hard to the concrete ground again and again

8  and again... resulting in one injury after another. On April 3,2020 plaintiff submitted a CDCR 7362 form

9  complaining that his back gave out and he fell hard to the concrete ground. On April 15,2020, plaintiff

10  went to MD line and saw defendant LUU, M.D. who deliberately harm plaintiff by diagnosing the injury as a

11  "muscle spain/strain." Defendant LUU tells plaintiff: "It's just a sprain, it'll go away by itself within 3-week.

12  Upon information and belief, defendant LUU knew or should have known his failure to correctly diagnose it as

13  de Quervain's tenosynovitis causes a substantial risk of serious harm to plaintiff. On April 20,2020

14  plaintiff saw defendant LUU again which he already knows plaintiff's severe chronic back pain from time

15  to time give out, yet defendant LUU disregard 1 of 3 that risk by failing to take reasonable measures to

16  abate it as he denied plaintiff request for steroid injection (Lumbar epidural steroid injection). "No

17  indication for steroid injection. No indication for egg crate (mattress), he wrote.

18        32.    Defendant M. LAUFIK, M.D. on April 17,2020 illegally engages in fraud by

19  heavily redacted reported of X-ray wrist left-3 VWS procedure in order to aid and abet defendant LUU

20  extreme departure from standard of practice so that he can harm plaintiff by denying treatment

21  altogether. Defendant LUU sent plaintiff a letter: "Your test results are essentially within normal limits...

22  no provider follow-up is required. XR 4/17/20."

23        33.    On June 7,2020, plaintiff filed a Health Care Grievance complaining

24  defendant medical doctors' deliberate indifference to his serious medical needs, which they intentionally

25  harmed plaintiff by denying adequate medical care to plaintiff's left wrist. In the month of May plaintiff

26  complained on CDC 7362, "My left wrist is in severe pain. Severe enough that sometimes I can't even

27  bend my fingers." Defendant medical doctors ignored plaintiff's plea for help as they stand by the results

28  of the X-ray 4/17/2020 as "normal," which no treatment is render. On June 2,2020 plaintiff

1  complaint again on CDC 7362, "My left wrist is still in a lot of pain. My back is in a lot of

2  pain too." Defendant medical doctors had actual knowledge [of] a substantial risk of serious harm

3  and disregard[ I ] [of] that risk by failing to take reasonable measures to abate it. The longer defendant

4  medical doctors left it untreated, the worst it got day by day. On June 6,2020 plaintiff submitted a

5  "Health Care Services Request Form" again: "Something is wrong with my left wrist. It's in a lot of pain.

6  Every morning when I wake up I can't even move my fingers. As if there's no blood flow to my left

7  hand. Also, my back is in a lot of pain too."

8            34.        Face-to-face on different occasions and dates plaintiff complained to

9  these defendants: CHAU, CORLEONE, CASIAN, LUU, Jason SILVA, M.P., Susen PASHA, N.P. (nurse practitioner),

10  Fred SEDIGHI, M.D., SANTOS, GULDSETH, and MOHAMED; that their deliberate indifference to plaintiff's

11  serious medical needs as they purposefully allowed plaintiff's multiple back problems to get worse, where

12  plaintiff's weakened back have gave out numerous times causing him to fall hard on the concrete which

13  resulted from one injury after another. "All you have is just arthritis of the back," defendants tells

14  plaintiff derisively. Several times plaintiff gave a brief accounts to all the injuries from falling

15  (back give out) to defendants: (1) 2½ inches gash on left forearm that bleeded profusely, (2) blacken

16  toenails on left foot that lasted for 6-month when I fell on it, (3) left wrist injury when my fallen

17  body crushed it that later resulted to "de Quervain tenosynovitis", (4) right knee injury when it impacted

18  hard against the concrete ground, (5) broken front tooth when my face hit the floor, (6) right wrist

19  injury when my fallen body landed on it, (7) right elbow injury when my elbow took most of the

20  falling impact straight on when I collapsed to the floor, (8) left side of my head injury when my

21  falling body slammed against the concrete floor, (9) left elbow injury when my body crushed it head on,

22  etc. — which plaintiff then asked defendants, "You keep on denying all the treatments I requested

23  for my chronic severe back problems, which resulted from all these falls and injuries — what happen if

24  I fall and break my neck one day and die? Or get injured to the point that I become a paraplegic

25  for life?" Defendants dismissed the whole thing as irrelevant and ended the MD-line each and

26  every times plaintiff complained face-to-face to these ten defendants listed above.

27            35.        Though plaintiff have never seen these defendants [Luzviminda SAIDRO, M.D.,

28  Ronald ZHANG, M.D., Gail MESSLER, M.D., David CLAYTON, M.D., Steven ROBERTS, M.D. (chief medical

1  executive & acting chief executive officer), John HODGES, M.D. (chief physician & surgeon) and
2  Ryan BARENCHI, M.D. (chief physician & surgeon)] in person, they have personally involved themselves in
3  decisions regarding plaintiff treatment. Physicians managers like BARENCHI and HODGES are supervisors
4  to plaintiff primary care physicians (PCP) — defendants CHAU, LUU, etc. — which without BARENCHI or
5  HODGES approval, no treatment can be provided. Defendant LUU wrote an order for plaintiff to receive
6  a steroid injection for his chronic severe back pain. Upon information and belief, defendants BARENCHI
7  and/or HODGES denied LUU's ordered of the steroid injection for plaintiff's chronic back pain that's
8  severe. Defendants named in ¶¶34 and 35, upon information and belief, have more than once went to
9  physician committee where they're discussed plaintiff's multiple complaints concerning his chronic
10  severe back pain and multiple back problems, whereupon, defendants are steadfast on their diagnosed
11  of "mild degenerative spondylosis." These defendants acted with deliberate indifference to plaintiff's serious
12  medical needs, due to the fact they have actual knowl[edge] of plaintiff's chronic severe back pain
13  and multiple back problems, yet they elected to ignored them and disregard[ ] [of] that risk by failing
14  repeatedly to take reasonable measures to abate it.

15          36.          Here plaintiff have an injured wrist, and he's given a CDCR patient education on
16  the "Wrist Pain," yet defendants LUU and SANTOS several times tells plaintiff to his face, "Your request for an
17  ice pack is denied. There's no indication for it." Plaintiff as an inmate don't have access to an ice pack.
18  Plaintiff have no other choice but to depend on his medical doctors (defendants LUU, SANTOS, etc.) to write
19  an order for him to have one. Defendants LUU, SANTOS, PASHA, and CORLEONE denying a simple treatment
20  of an ice pack speak for itself defendants straightforward outright malicious intent to harm plaintiff by
21  allowing plaintiff's left wrist injury to get worse to the point that it becomes a permanent injury, which
22  it has.

23          37.          Defendants deliberately delay for months before they gave plaintiff an MRI for
24  his left wrist. Defendant R. WATERS illegally engages in fraud by heavily redacted reported of MRI exam
25  in order to aid and abet defendant medical doctors who acted with deliberate indifference to plaintiff's
26  serious medical needs. The Eighth Amendment proscribes the unnecessary and wanton infliction of pain on
27  inmates, including the deprivation of medical care. Defendants purposefully failed to diagnose plaintiff's
28  ///

1   wrist pain problem as de Quervain tenosynovitis, failed with intent to cause harm by denying an ice

2   pack, and failed to provide corticosteroid injection to plaintiff's left wrist within 6-month when the

3   treatment is most affective. Defendants failed to treat in a timely manner resulted to further signi-

4   ficant injury (e.g. past six months de Quervain tenosynovitis becomes a chronic condition, and the treatment

5   of corticosteroid injection becomes less effective) and the unnecessary and wanton infliction of pain.

6         38.        From May 6, 2020 (i.e. Plaintiff made copies of all these 7362's) to April 30,

7   2021 plaintiff submitted thirty-one CDC 7362 forms complaining that his left wrist is in severe pain—

8   severe enough that sometimes he can't even bend his fingers. On record de Quervain tenosynovitis was con-

9   firmed by defendant WATERS, M.D. from MRI of 8/18/2020, yet defendants WATERS, LUU, SANTOS,

10  CORLEONE, PASHA, SILVA, GULDSETH, MOHAMED, CHAU, SEDIGHI, et al. continued to denied an ice pack as

11  the simplest conservative treatment, which they in concert denied Morphine painkiller medication to alleviate

12  plaintiff's severe pain. Defendants actions and inactions caused plaintiff de Quervain tenosynovitis to become

13  chronic, and made the corticosteroid injection on 3/23/2021 useless and ineffective. On April 3, 2020

14  plaintiff first complaint of his left hand and wrist injury. Defendants' deliberate indifference to plaintiff's

15  serious medical needs dragged on to nearly a year to act by giving him a corticosteroid injection that was too

16  late because permanent damage already have been done.

17        39.        The MRI of 8/18/2020 also showed plaintiff have wrist joint and inter-

18  carpal arthritis, but defendants WATERS and LUU deliberately failed to inform plaintiff about it. After

19  plaintiff received his medical records upon his request, he found out defendants WATERS and LUU held

20  back vital informations on the matter of plaintiff having wrist joint and intercarpal arthritis; their

21  way of deliberate indifference to plaintiff's serious medical needs due to the fact that if plaintiff

22  did [di]not know he had these medical problems then there is no need for defendants to provide

23  treatment at all. Several times plaintiff submitted CDCR 7362 forms requesting treatments for his

24  wrist joint and intercarpal arthritis, but defendants' acted with deliberate indifference to plaintiff's

25  serious medical needs as they again purposefully with malicious and sadistic intent delayed to pro-

26  vide treatments in order to cause further harm and injury to plaintiff.

27        40.        Plaintiff have filed so many complaints against defendants (e.LYNN, ROBERTS,

28  LUU, CHAU, CORLEONE, SANTOS, PASHA, Nayeli MILLAN (registered nurse), SAZON (registered nurse), et al.)

1  threatening them with lawsuits, but as the years goes by and there's no lawsuits filed against

2  them—it emboldened defendants to take away treatments for plaintiff's hypercholesterolemia.

3  When they did this, defendants deliberately put plaintiff's life at risk to die from a stroke and heart-attack.

4  Defendants then took away treatments for plaintiff's osteopenia. Consciously defendants knew that

5  they are putting plaintiff at risk of getting osteoporosis, due to the fact osteopenia is the beginning

6  stage of bone weakness and that without treatment it progress rapidly to osteoporosis— that's

7  permanent and irreversible. Defendants then took away treatments for plaintiff's hypogonadism.

8  It is with malicious intent defendants knew that without treatment for plaintiff's hypogonadism it

9  will lead to serious heart disease and death, but it didn't stop defendants from the medication they

10  took away.

11       41.       On August 19, 2020, plaintiff filed a CDCR 602 complaining against defendant

12  LUU's deliberate indifference to plaintiff's serious medical needs. Defendant EAZON again (see PP

13  13, 21-22) rejected to process the 602 in order to aid and abet defendant LUU's denial of medical care

14  to plaintiff, who have been injured when plaintiff's back gave out is mainly caused by deliberate indifference

15  of defendants intentionally allowing plaintiff to get additional injuries again and again.

16       42.       On November 11, 2020, plaintiff filed a CDCR 602 against the Reasonable

17  Accommodation Panel as defendants S. ANDERSON and A. KENDALL agreeing with defendant's medical

18  doctor who stated: "Nguon was evaluated by his primary care provider (PCP) on 9/17/20, and determined

19  that he would not benefit from having egg-crate mattress, pain consultation, and morphine." Defendants

20  ANDERSON and KENDALL denied plaintiff's request, which by itself showed they personally involved in

21  decision regarding plaintiff's treatment, wherefore, their deliberate indifference is a direct intent in

22  letting plaintiff get more injuries when his back give out and plaintiff fall hard to the concrete ground.

23       43.       On September 17, 2020, plaintiff filed a CDCR 602 complaining about his

24  high cholesterol problem that's getting worse. Defendant M. SOUSLEY (registered nurse), upon information

25  and belief, had opportunities to intervene and see to it plaintiff receive adequate medical care, but

26  SOUSLEY elected to stand by aiding and abetting defendant medical doctors who acted with deliberate

27  indifference to plaintiff serious medical needs. Here, plaintiff asked for a prescription of Fibrates,

28  Niacin (Vitamin B5), Gemfibrozil, and Levothyroxine. Defendant SOUSLEY rejected to process the 602

1  and deliberately allowed defendant medical doctors to do harm against plaintiff.

2  44.     Defendant LUU and other defendant medical doctors participated in discontinuing

3  plaintiff's prescription of Atorvastatin Calcium; defendants direct attempt in trying to cause plaintiff to

4  have a stroke or heart-attack so he could seriously be harm—and even death. Numerous times plaintiff

5  submitted CDCR 7362 trying to get Atorvastatin Calcium back, but to no avail. For about 6-month

6  plaintiff had no medication to treat his hyperlipidemia.

7  45.     Defendants LUU, GULDSETH, and other medical doctors then engaged in discon-

8  tinuing plaintiff's Calcium-vitamin D that mainly treat his osteopenia problem. It's a fact plaintiff's

9  bone is already weakened, especially his whole spine. It's quite obvious defendants is out to do harm

10  against plaintiff in retaliation for all the complaints he filed and threats of lawsuit.

11  46.     There's no cure for osteopenia, and it only get worse over time resulting in

12  osteoporosis. Calcium supplement causes kidney stone when it is used over 6-month or longer. When plaintiff

13  asked defendant LUU for an alternate treatment for his osteopenia, defendant LUU denied LNS (liquid

14  nutrition supplement—"Ensure Max Protein" drink) when plaintiff requested for it in replacement of

15  Calcium-vitamin D. Then he discontinued Calcium-vitamin D leaving plaintiff with nothing to treat his

16  osteopenia. Defendant LUU then tells plaintiff, "There's no indication that you have osteopenia."

17  Defendant LUU acted with deliberate indifference to plaintiff's serious medical needs, which denied

18  treatment for osteopenia for months.

19  47.     On May 17, 2021, plaintiff filed a CDCR 602 requesting treatment for his

20  osteopenia problem that defendants LUU, GULDSETH, and other medical doctors who acted with deliberate

21  indifference to plaintiff serious medical needs, due to the fact defendants' factual intent to harm

22  plaintiff by discontinuing his Calcium-vitamin D since 3/18/2021 without any replacement at all. Defendant

23  SAZON rejected to process the Health Care Grievance in order to aid and abet defendants LUU,

24  GULDSETH, and other medical doctors as she had done so at ¶¶13, 21, 22, and 41.

25  48.     Doctor Jalal Soltanian-Zadeh, physician & surgeon confirmed that plaintiff

26  have hyperlipidemia. Defendants LUU and other medical doctors lied on purpose to do harm against

27  plaintiff by saying his cholesterol is normal, and that there's no indication for plaintiff to be on Atorva-

28  statin Calcium medication. Defendants did serious harm to plaintiff by attempting to induce a stroke

or heart-attack. They did this deliberately with a clear conscience to let plaintiff's cholesterol problem get worse by the day. It's no difference from an attempted murder that defendants committed in broad daylight, with no shame whatsoever while wearing a white coat of a doctor. Several times plaintiff requested a CAC test to check for blood vessels calcified plates that has significantly gotten worse when defendants deliberately discontinued plaintiff's cholesterol medication for about 6-month. Defendants then [re]fuses several times to order the CAC test because they did not want to leave a trail of damaging evidence of what they've done illegally in violations of plaintiff's Constitutional rights.

"9.          On 9/2/2021 defendant LUU deliberately suspended plaintiff's weekly testosterone injection that he has given on a regular basis since 2015. Plaintiff have hypogonadism since his early 30's, and received treatment of testosterone cypionate first at Vacaville in 2009. Defendant LUU and other defendant medical doctors can't seem to stop trying to harm plaintiff in one way or another. As if they won't stop trying until they successfully murder plaintiff or cause him to become a paraplegic for life.

50.          On June 7, 2021, plaintiff filed a CDCR 602 HC against defendant Nayeli MILLAN (registered nurse) who'd threatened plaintiff with a "write up" [sic] if he keeps on submitting CDCR 7362 "Health Care Services Request Form" on the same issues. "Same issue" mean for example: defendants discontinued plaintiff's cholesterol medication, which caused plaintiff to submit at least sixty 7362 forms for 6-month requesting again and again and again... that he has high cholesterol problems and he doesn't have any medications to treat it. That he don't want to die from a stroke or heart-attack. "You will be "written up" [sic] if you keep on submitting 7362's on the same issue," defendant MILLAN tells plaintiff. [Written up is the same as an RVR (Rule Violation Report) or CDC 115: punishments can range from no yard for 90-day, no dayroom for 90-day, no packages for 90-day, no canteen for 90-day, no visits for 90-day, no phone calls for 90-day, and perhaps even no doctor's line or RN-line for 90-day, etc.]

51.          Defendant Anna SANCHEZ, SRN (senior registered nurse) on 7/23/2021 tried to cover-up their illegal activities by saying: "...The communication was likely misinterpreted and the intent was to educate him regarding ongoing care and appeals process." Defendant SANCHEZ's statement is nothing more than a lie. Throughout this Complaint numerous defendant medical doctors acted with deliberate indifference to plaintiff's serious medical needs as they blatantly refuses to provide one

~14~

1   treatment after another, until defendants realized that they have not received any lawsuits from
2   plaintiff for all their Constitutional violations, this news fortified defendants to begin their sick twisted
3   conviction to take away medications and treatments that plaintiff have been receiving for years. And
4   here comes along defendants MILLAN, SANCHEZ, Gerardo BARAJAS (registered nurse), and many other
5   nurses who are pawns to defendant medical doctors — thrown at plaintiff; trying to shut him up by
6   denying his access to adequate medical care. That once defendant medical doctors denied treatment or
7   take away treatment, plaintiff is not allowed to keep on submitting 7362 forms again and again on
8   the same issue. That way there would be no trail of evidence of defendants guilt to Constitutional
9   violations.

10   52.   Defendant BARAJAS threatened plaintiff several times with a CDC 115 if
11   plaintiff keep persisting submitting 7362 forms on the same issues. Where later he tried to clean it up
12   by writing on the health care "Progress Notes" as: "IP (inmate/patient — plaintiff) to be educated on overuse
13   of services."

14   53.   Every month they have a "Population Management Working Session" where all the
15   medical doctors, nurses, and supervisors come together in a "huddle"[sic] (term coined by medical staff(s)) or
16   "pop management"[sic] (another term invented by medical staff(s)) and discussed of inmate/patient. Upon
17   information and belief, defendants GLYNN, ROBERTS, HODGES, BARENCHI, LUU, CHAU, CORLEONE, SILVA,
18   MOHAMED, BROWN, WATERS, CASIAN, LAUFIK, ANDERSON, ALANIS, SANTOS, GULDSETH, PASHA,
19   MILLAN, SAZON, BARAJAS, VIERNES, SANCHEZ, TUASON, GARCIA, LTUATO, RUIZ, Noel MENDOZA,
20   CHANTHALANGSY, VALENCIA, Argenis MENDOZA, BELTRAN, STEPHENSON, CLAYTON, SIHOTANG,
21   IGLESIAS, HUGHES, POOL, CANELA, WEBB, RAZCON, DENTON, JOSEPH, TENORIO, MESSLER, BAUN,
22   SAGIAO, INZUNZA, VINCENT, HAWTHORNE, MESINA, STARK, BASTO, LOPEZ, WEXMAN, CARNEAL,
23   AUSTRIA, PAK, MARTINEZ, SILLAS, ZHANG, PEREZ, PARAGAS, SAIDRO, MCELROY, HERNANDEZ,
24   ZAMORA, McCANN, DOMINGO, TRAN, BURGANO, SANTILLAN, DIVINA, IVORY, TOPALOV, ERAS, MORERA,
25   LETULIGASENOA, EDGAR, OCEGUEDA, ABEDEEN, SEDIGHI, SCHULTZ, and SOUSLEY at one time or
26   another participated in Population Management, whereupon, defendants acted with deliberate indiffer-
27   ence to plaintiff's serious medical needs by conspiracy to interfere with plaintiff's civil rights when
28   they voted to punish plaintiff with CDC 115 for seeking medical care through form CDCR 7362.

54.      Defendants named in ¶53 had numerous opportunities to intervene and see to it plaintiff receive adequate medical care that's in pair to community standard of care, but they instead consciously elected to put in their vote aiding and abetting scores of defendant medical doctors who acted with deliberate indifference to plaintiff's serious medical needs which resulted in further significant injury and caused unnecessary and wanton infliction of pain that has no penological benefits whatsoever.

55.      Plaintiff have written a fair amount of letters to defendant Marcus POLLARD (warden), defendant Ralph M. DIAZ (secretary of CDCR), defendant Kathleen ALLISON (secretary of CDCR), defendant Raquel BUCKEL (chief deputy warden), defendant Raymond MADDEN (warden), defendant Tammy FOSS (Director Corrections Services of CDCR), and defendant Connie GIPSON (Director Division of Adult Institutions) — complaining to them that a myriad of defendant medical doctors and its defendant administrative supervisors in the Health Care Department at RJDCF acting with deliberate indifference to plaintiff's serious medical needs which resulted in further significant injuries and caused unnecessary and wanton infliction of pain that has no penological benefits whatsoever. Defendants listed in this paragraph from line 7-10 wield enormous power throughout CDCR and prison — acting within the scope of their employment, wherefore, plaintiff made sure to informed them several times (by mean of letters), yet these high ranking defendants know for a fact plaintiff is in need of immediate medical care, but they willfully and wantonly failed to take reasonable action to summon such medical care, withal, defendants recklessly allowed the Constitutional violations to continue.

56.      Under color of law, defendants BUCKEL, POLLARD, MADDEN, FOSS, GIPSON, S. GATES, Matthew PALMER, DIAZ, and ALLISON are bosses of prisons, whom are the ultimate authority responsible for plaintiff safe custody. Here defendants knowingly exposed plaintiff to dangerous level of one deliberate indifference to his serious medical needs to the next, resulting in plaintiff suffering in severe pain and injuries — as defendants had punitive intent to let it happened when they had the sole authority to put it to a stop. Plaintiff as a prisoner must depend on prison officials (defendants identified in ¶¶ 55-56) to provide him adequate medical care, due to the fact plaintiff can't just walk out of prison and go to a hospital or medical doctor that will provide him adequate medical care. Defendants' duty is owed to plaintiff "safe custody," whereupon, a breach of that duty owed by the defendants

1  to plaintiff, a breach of that duty by defendants, that the breach was the proximate cause of
2  harm suffered, and the damages suffered were a direct result of that harm.

3    57.    Defendant GLYNN have been well apprised countless times that a multitude
4  of defendant medical doctors who acted with deliberate indifference to plaintiff's serious medical needs which
5  resulted in further significant injury and caused unnecessary and wanton infliction of pain. After so
6  many "Health Care Grievances" plaintiff filed, defendant LUU confided to plaintiff: "I can't immediately
7  order an MRI for your back or wrist. Blame it on the administration (meaning defendant GLYNN who is the
8  CEO), I have to follow protocol." Defendant SANTOS confessed to plaintiff: "I can't give (or prescribe) you
9  Morphine, even if I wanted to. The administration won't let me." These informations bring us back to ¶7,
10 making it a fact that defendant GLYNN personally involved herself in violating plaintiff's Eighth Amendment
11 Claims—right to medical care. By defendant GLYNN authority under color of state law deliberately
12 instituted a toxic environment of [d]irecting medical doctors under her leadership to practiced deliberate
13 indifference to plaintiff's serious medical needs.

14    58.    Three times plaintiff filed complaints on various issues that's stated in this 1983
15 to the Government Claims Program. Thus, plaintiff exhausted all forms of available relief within CDCR and
16 the Government Claims Program.

17    59.    Defendant Eric P. HOFMEISTER, M.D. illegally engaged in medical malpractice by
18 deliberately failing to treat plaintiff's de Quervain tenosynovitis in order for him to make more money from
19 surgery procedure because the corticosteroid injection was not done according to scientific studies that
20 highly recommended: corticosteroid injection once a month for 6-month before surgery would be consider.
21 Defendant did one lousy injection and he wanted to proceed to extreme measure of surgery.

22    60.    Defendant Howard TUNG, M.D. committed medical malpractice by heavily
23 redacted report in collusion with defendant medical doctors who acted with deliberate indifference to
24 plaintiff's serious medical needs, which resulted in further significant injury and caused unnecessary and
25 wanton infliction of pain and sufferings.

26    B. Defendants

27    61.    Defendant Mary Ann GLYNN, CEO (Chief Executive Officer) of the Health Care
28 Department at RJD Correctional Facility. She is sued in her individual and official capacity. As the CEO she

1  is obligated to supervise her fellow staffs that obey the laws and ensure plaintiff receive adequate
2  medical care that's bound by the Constitution. Her failured as a CEO had lead to this lawsuit when she
3  knew many of the defendant medical doctors openly practiced deliberate indifference to plaintiff's serious
4  medical needs which resulted in further significant injuries and pain.

5      62.      Defendant Steven ROBERTS, CME (Chief Medical Executive) is second in command
6  after GLYNN, personally involved himself in decisions regarding plaintiff treatment, Laznd purposefully
7  giving authority to medical doctors under his supervision to manipulate and falsified CDCR documents in
8  order to denied medical care altogether to plaintiff so he can suffer. He is sued in his individual and
9  official capacity.

10      63.      Defendants John HODGES and Ryan BARENCHI are both Chief Physician
11  Executive & Surgeon hold the same rank just below ROBERTS, personally involved themselves in decisions
12  regarding plaintiff treatment. They are the overseer to plaintiff primary care provider(PCP), which without
13  their consent no treatments can be render. The deprivation plaintiff suffered was objectively, sufficiently
14  serious and that defendants HODGES and BARENCHI was deliberately indifference to plaintiff's health
15  and safety in allowing the deprivation to take place. They are sued in their individual and official
16  capacity.

17      64.      Defendants Tri Thanh LUU, John Kwok-Wah CHAU, Erica Uanna Goyal
18  CORLEONE, JASON SILVA, Amir MOHAMED, Gina CASIAN, Michael Balbin SANTOS, David GULDSETH,
19  David CLAYTON, Gail MESSLER, Ronald ZHANG, Luzviminda SAIDRO, and Fred SEDIGHI are all medical
20  doctors who've acted with deliberate indifference to plaintiff's serious medical needs which resulted
21  in further significant injury and caused unnecessary and wanton infliction of pain that has no
22  penological benefits whatsoever. They are sued in their individual capacity.

23      65.      Defendant Eric P. HOFMEISTER, M.D. is an orthopedic hand surgeon at
24  Alvarado Medical Center who engaged in medical malpractice as stated in ¶59. He is sued in his
25  individual capacity.

26      66.      Defendants B. BROWN, R. WATERS, M. LAUFIK, and C. SCHULTZ are
27  radiologist at RJD who illegally engages in fraud by heavily redacted report of X-ray and MRI examina-
28  tions in order to aid and abet defendant medical doctors who've acted with deliberate indifference to

-18-

1 | plaintiff's serious medical needs which resulted in further significant injury. They are sued in

2 | their individual capacity.

3 |         67.        Defendants S. ANDERSON and F. ARMENTA are Associate Warden ADA

4 | Coordinator at RJD who both have a fiduciary duty to ensure plaintiff receive adequate medical care,

5 | but instead they personally involved in decision regarding plaintiff's treatments by aiding and abetting

6 | defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs.

7 | They are sued in their individual capacity.

8 |         68.        Defendant V. ALANIS, Chief Support Executive knew or should have known

9 | a considerable number defendant medical doctors under his/her supervision acted with deliberate

10 | indifference to plaintiff's serious medical needs which resulted in further significant injuries and

11 | caused unnecessary and wanton infliction of pain. ALANIS failed to intervene is his/her recklessness

12 | allowing the Constitutional violations to continue. He/she is sued in his/her individual and official

13 | capacity.

14 |         69.        Defendant Susan PASHA, NP (nurse practitioner) acted with deliberate indifference

15 | to plaintiff's serious medical needs which resulted in further significant injury and caused unnecessary

16 | and wanton infliction of pain that has no penological benefits whatsoever. She is sued in her individual

17 | capacity.

18 |         70.        Defendants Nayeli MILLAN, Armyn Ferrer-SAZON, Gerardo BARAJAS,

19 | Abraham VIERNES, Sheryl TUASON, Carrie LIUATO, Krystaline RUIZ, Noel MENDOZA, Udorn

20 | CHANTHALANGSY, E. VALENCIA, Argenis MENDOZA, Beverly BELTRAN, Lia STEPHENSON, M. LOPEZ,

21 | M. WEXMAN, C. CARNEAL, J. AUSTRIA, T. PAK, Sir Patrick PARAGAS, Jennifer McCANN, Antim

22 | TOPALOV, A. MORERA, and M. SOUSLEY are all registered nurses who had a cornucopia of

23 | opportunities to intervene and see to it plaintiff receive adequate medical care. But instead, they

24 | recklessly elected to stand by aiding and abetting defendant medical doctors who've acted with deliberate

25 | indifference to plaintiff's serious medical needs. Furthermore, these defendant nurses participated in

26 | conspiracy to interfere with plaintiff's civil rights to medical care when they attended "Population

27 | Management" and voted to punish plaintiff for seeking medical care through form CDCR 7362. They

28 | are sued in their individual capacity.

71.       Defendants Marcus POLLARD and Raymond MADDEN are warden of RJD whom both received several letters from plaintiff complaining to them that a large number of defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs. And yet, they failed to act to prevent them, and wilfully and wantonly permitted the Constitutional violations to continue. They are sued in their individual and official capacity.

72.       Defendant S. GATES, Chief of Health Care Correspondence personally involved himself/herself in violating plaintiff's right to adequate medical care by participating in deliberate indifference with over a dozen defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs. He/she is sued in his/her individual and official capacity.

73.       Defendants Ralph M. DIAZ and Kathleen ALLISON are Secretary of CDCR whom received letters from plaintiff complaining to them of various defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs. Defendants DIAZ and ALLISON failed to act to prevent them, and recklessly allowed the Constitutional violations to continue. They are sued in their individual and official capacity.

74.       Defendant Matthew PALMER, associate warden was directed by defendant POLLARD to reply to plaintiff's letters of complaint against defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs. And yet, PALMER failed to act to prevent them, thus, he deliberately allowed the Constitutional violations to continue. He is sued in his individual and official capacity.

75.       Defendants Anna SANCHEZ, Brandy GARCIA, and Mary Jane BAUN are supervisor registered nurses (SRN) who are the product of a broken system as they personally involved themselves in decisions regarding plaintiff treatment by aiding and abetting defendant medical doctors who've acted with deliberate indifference to plaintiff's serious medical needs. Furthermore, these defendant SRN's participated in conspiracy to violate/interfere with plaintiff's civil rights to medical care when they attended "Population Management" and voted to punish plaintiff for seeking medical care through form CDCR 7362. They are sued in their individual capacity.

76.       Defendants Octavian SIHOTANG, Rafael IGLESIAS, Candice HUGHES, David POOL, Andrea CANELA, Nicole WEBB, Joseph SAGIAO, INZUNZA, Caren VINCENT,

1 Delmarshae HAWTHORNE, Jennifer MESINA, Aylish STARK, Victoria McELROY, Judy TRAN,

2 Jennifer BURGANS, Raul SANTILLAN, Leanne DIVINA, M. ERAS, Iakopo LETULIGASENOA,

3 Melissa EDGAR, Elizabeth OCEGUEDA, and Zahir M. ABEDEEN are all licensed vocational nurses

4 who've acted with deliberate indifference to plaintiff's serious medical needs by engaging in conspiracy

5 to interfere with plaintiff's civil rights to medical care when they took part in "Population Manage-

6 ment" and voted to punish plaintiff for seeking medical care through form CDCR 7362. They are

7 sued in their individual capacity.

8         77.         Defendant Sandra RAZCON, certified nurse assistant (CNA) acted with

9 deliberate indifference to plaintiff's serious medical needs by taking part in a conspiracy to interfere

10 with plaintiff's civil rights to medical care when she went to "Population Management" and voted to

11 punish plaintiff for seeking medical care through form CDCR 7362. She is sued in her individual

12 capacity.

13         78.         Defendants Andrew DENTON, Ashley JOSEPH, Jonathan SILLAS,

14 Elizabeth PEREZ, and Julie HERNADEZ are all OT. More than once they've personally involved

15 themselves in carrying out orders from defendant medical doctors, which they knew or should have

16 known the doctors are acting with deliberate indifference to plaintiff's serious medical needs.

17 Their failured to report or intervene in any way is an act of them allowing the Constitutional violations

18 to continue unabated. They are sued in their individual capacity.

19         79.         Defendant Kimberly TENORIO, chief nurse executive (CNE) have a fiduciary

20 duty to ensure plaintiff receive adequate medical care, but instead she personally involved herself in

21 decisions regarding plaintiff treatments by aiding and abetting defendant medical doctors who've acted with

22 deliberate indifference to plaintiff's serious medical needs. She is sued in her individual and official

23 capacity.

24         80.         Defendant Howard TUNG is a neurosurgeon at Tri-City Medical Center who

25 committed medical malpractice as stated in ¶60. He is sued in his individual capacity.

26         81.         Defendant Adelita BASTO, RND who've acted with deliberate indifference to

27 plaintiff's serious medical needs by conspiracy to interfere with plaintiff's civil rights to medical care when

28 she participated at "Population Management" voting to punish plaintiff for seeking medical care through CDCR

1  7362 form. She is sued in her individual capacity.

2      82.    Defendant Jason MARTINEZ, Healthcare captain who received a letter from

3  plaintiff complaining to him that a lot of defendant medical doctors who've acted with deliberate

4  indifference to plaintiff's serious medical needs; and yet MARTINEZ willfully failed to act to prevent

5  them, and deliberately permitted the Constitutional violations to continue. He is sued in his individual

6  capacity.

7      83.    Defendant Raquel BUCKEL, chief deputy warden (CDW) who received a letter from

8  plaintiff complaining to her that a lot of defendant medical doctors who've acted with deliberate indif-

9  ference to plaintiff's serious medical needs; and yet BUCKEL wantonly failed to act to prevent them,

10  and purposefully allowed the Constitutional violations to continue. She is sued in her individual

11  and official capacity.

12      84.    Defendant Elizabeth ZAMORA, E.DA several times she personally involved

13  herself in carrying out orders from defendant medical doctors, where she knew or should have known

14  the doctors are acting with deliberate indifference to plaintiff's serious medical needs. Her failure to

15  report or intervene in any ways allowed the Constitutional violations to continue. She is sued in her

16  individual capacity.

17      85.    Defendant Teresita DOMINGO, physical therapist illegally engages in fraud by

18  making false statements in order to aid and abet defendant medical doctors who acted with deliberate

19  indifference to plaintiff's serious medical needs which resulted in further significant injuries and

20  caused unnecessary and wanton infliction of pain and sufferings. She is sued in her individual capacity.

21      86.    Defendant Tammy FOSS, Director Corrections Services of CDCR and defendant

22  Connie GIPSON, Director Division of Adult Institutions have both received letters from plaintiff com-

23  plaining to them that a lot of defendant medical doctors who've acted with deliberate indifference to

24  plaintiff's serious medical needs; and yet they failed to act to prevent them, and recklessly allowed

25  the Constitutional violations to continue. They are sued in their individual and official capacity.

26      87.    Defendant K. ADRIAN, compliance analyst & health care grievance representa-

27  tive and defendant A. KENDALL, health care compliance analyst — they both could have intervene and

28  should have intervene, but instead they aided and abetted defendant medical doctors who've acted with

1  deliberate indifference to plaintiff's serious medical needs, which resulted in further significant injuries
2  and caused unnecessary and wanton infliction of pain. They are sued in their individual capacity.

3       88.     All defendants resides in San Diego except DIAZ, GATES, ALLISON, FOSS and
4  GIPSON who resides in Sacramento.

5  **VI. Plaintiff's Allegations**

6       89.     PP 6-87 are hereby incorporated to plaintiff's allegations.

7  **VII. Statement of Plaintiff's Claims**

8       90.     PP 6-87 are hereby incorporated to Statement of Plaintiff's Claims.

9  **VIII. Cause of Action**

10  42 U.S.C. §1983, 8th Amendment to U.S. Constitution

11  (Plaintiff v. GLYNN, et. al.)

12       91.     The allegations contained in PP 6-87, inclusive, are hereby incorporated by reference.

13       92.     Defendants named in PP 61-64 violated plaintiff's right to be free from cruel and
14  unusual punishment guaranteed to plaintiff by the Eighth Amendment to the United States Constitution by
15  defendants illegally subjected plaintiff to woefully inadequate medical care, brought upon by defendants
16  medical doctor deliberate indifference to his serious medical needs.

17       93.     Defendants named in PP 55-57 violated plaintiff's right to be free from
18  cruel and unusual punishment guaranteed to plaintiff by the Eighth Amendment to the United States
19  Constitution by defendants failured to adequately superise defendant medical doctors that are subordinate
20  to them.

21       94.     Defendants' wrongful actions alleged herein are in violation of 42 U.S.C. §1983
22  because they have deprived plaintiff of rights, benefits, and privileges secured by the U.S. Constitution.

23       95.     Defendants (PP 61-87) acted under color of state law.

24       96.     Defendants (PP 61-87) knew or should have known that their conduct, attitudes
25  and actions created an unreasonable risk of serious harm to plaintiff.

26       97.     The actions and conduct of defendants (PP 61-87) demonstrate deliberate
27  indifference to plaintiff's Eighth Amendment rights.

28       98.     As a proximate result of the defendants' violations of plaintiff's right to be

1  free from cruel and unusual punishment while he was at RJDCF, plaintiff has suffered, is suffering,
2  and will continue to suffer irreparable harm.

3       99.    As a direct and foreseeable result of the defendants' violations of the
4  Eighth Amendment, plaintiff has suffered, is suffering and will continue to suffer physical injuries in
5  the form of damage to his back, left hand, knees, head, elbows, hypogonadism, hypercholesterolemia, problems
6  with balance, osteopenia, damage blood vessels, and other injuries.

7      100.    As a direct and foreseeable result of the defendants' violations of the Eighth
8  Amendment, plaintiff has suffered, is suffering and will continue to suffer injuries in the form of chronic
9  severe pain, and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental
10  distress and other injuries.

11      101.    An actual controversy exists between plaintiff and defendants concerning
12  their rights, privileges, and obligations.

13      102.    Defendants (¶¶ 81-87) acts were willful, intentional, malicious, wanton, and
14  despicable in conscious disregard of plaintiff's rights, entitling plaintiff to an award of exemplary
15  damages.

16  **IX.** _Demand for Jury Trial_

17      103.    Pursuant to Rules 16 and 38(b) of the Federal Rules of Civil Procedure,
18  plaintiff demand that this action be tried by and before a jury to the extent provided by the law.

19  **X.** _Preliminary Injunction_

20      104.    Plaintiff request this Court to grant plaintiff a full spine MRI, head MRI, and
21  left hand MRI to be done at USC Hospital in Los Angeles, since the ones done here in San Diego defendants
22  have engaged heavily redacted report fraud, and manipulations.

23      105.    Plaintiff request this Court to grant plaintiff a face-to-face in person consul-
24  tation with a spine specialist, head specialist, and hand specialist at USC Hospital in Los Angeles. And a
25  pain manager or pain specialist.

26      106.    Plaintiff request this Court to grant plaintiff a CAC test to be perform at
27  USC Hospital in Los Angeles. Also a test to check bone density. A test to check head trauma and damages
28  due to plaintiff multiple falls where his head hit the ground. And Alzheimers disease test as well.

107. Plaintiff request this Court to grant plaintiff an egg-crate mattress, a prescription of Morphine 60mg 4x/day for 365-day to alleviate his chronic severe pain.

### PRAYER FOR RELIEF

108. WHEREFORE, plaintiff respectfully prays for relief as follows:

1. Issue a declaratory judgment that the defendants' actions complained of herein violate plaintiff's rights under the U.S. Constitution and as otherwise alleged herein;

2. Award plaintiff monetary damages, compensatory, punitive, and other damages stated at ¶2, for a total amount of $13 million dollar ($13,000,000.00);

3. Award plaintiff the costs of suit and reasonable attorney's fees;

4. Grant plaintiff Preliminary Injunction at ¶¶104-107;

5. Retain jurisdiction of this case until defendants have fully complied with the orders of this Court, and there is a reasonable assurance that defendants will continue to comply in the future absent continuing jurisdiction; and

6. Grant plaintiff such other and further relief as the Court deems just and proper.

Dated: February 20, 2022

Respectfully submitted,

*Hung Duong Nguyen*

Hung Duong Nguyen
PRO SE