1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HUNG DUONG NGUON,
CDCR #K-49649,

                                    Plaintiff,

            vs.

MARY ANNE GLYNN, et al.,

                                    Defendants.

Case No.:  21cv2113-CAB (JLB)

**ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. § 1915A**

18
19
20
21
22
23

        Plaintiff Hung Duong Nguon, a state prisoner confined at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, has paid the civil filing fee and filed a First Amended Complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 11.)  Plaintiff claims he received inadequate medical treatment in violation of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), and state law.  (*Id*. at 1-24.)

24

**I.      Screening pursuant to 28 U.S.C. § 1915A**

25

        **A.      Standard of Review**

26
27
28

        Because Plaintiff is a prisoner, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915A.  Under that statute, the Court must sua sponte dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a

claim, or seeks damages from defendants who are immune.  *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

The standard for determining whether a prisoner has failed to state a claim upon which relief can be granted under § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

## B.    Allegations in the First Amended Complaint

Plaintiff alleges that when he arrived at RJD on December 20, 2019, he was told he would be seen by a medical doctor within five days as required by RJD policy.  (ECF No. 11 at ¶ 8.)  On December 26, 2019, he filed a California Department of Corrections and Rehabilitation ("CDCR") 602 inmate grievance complaining that he had not been seen by a doctor within five days of arrival, which had caused his prescription for the pain medication Tramadol to be "cut off abruptly."  (*Id*. ¶ 9.)  Plaintiff went to the "MD-line" on December 27, 2019, where Defendant RJD Dr. Corleone examined him and "lied and fabricated on CDCR documents" that Plaintiff did not have a compression fracture of his spine and lumbar spine scoliosis, even though "a handful of medical doctors" had previously diagnosed those conditions.  (*Id*. ¶¶ 10-11, 64.)  He alleges his severe chronic back pain was left untreated by Dr. Corleone causing his condition to worsen to the point where his back goes out causing him to "fall hard to the ground," and has debilitating pain when he walks, stands, sits or bends, as well as numbness, tingling and weakness in his back and legs, and loss of control of his bladder and bowels.  (*Id*. ¶ 12.)

On January 6, 2020, Plaintiff went to the MD-line again and was seen by Defendant RJD Dr. Chau who "upheld" the "fabrication of CDCR documents in conjunction with"

Dr. Corleone.   (*Id*. ¶¶ 15, 64.)   Plaintiff states that although he has "pain that's radiculopathy," Dr. Chau "lied and fabricated on CDCR documents" that he has "chronic back pain without radiculopathy," and based on that diagnosis denied his requests for morphine, a CT-Scan and an MRI.   (*Id*. ¶ 16.)   Dr. Chau also allegedly deleted spinal scoliosis from the "problem list" of Plaintiff's ongoing medical conditions and falsely claimed he did not show acute distress or grimacing.   (*Id*.)   Plaintiff states that doctors specializing in spine problems at the University of California, Davis have diagnosed him with "chronic-appearing vertebral body height loss," "multilevel disk degeneration within the thoracic spine," "hypodense faci within multiple vertebral bodies [with] coarsened trabeculae, possibly representing osseous hemangiomas," "facet arthropathy," "disc bulge with intervertebral disc height loss," "bilateral facet arthropathy with small left facet joint effusion," and "focal protrusion with small annular fissure into the right lateral recess." (*Id*. ¶¶ 17, 19.)   Several other doctors have diagnosed him with lumbar spinal scoliosis with gross thoracic kyphosis.   (*Id*. ¶ 25.)   After he saw Dr. Chau again on January 14, 2020, Dr. Chau allegedly falsified medical records to reflect that Plaintiff did not complain of a "decubitus ulcer in the buttocks or sacrum area [and] pressure sores," and then "denied every request that Plaintiff asked for."   (*Id*. ¶ 18.)   Plaintiff filed 602 grievances against Dr. Corleone on January 9, 2020, and against Dr. Chau on January 23, 2020.   (*Id*. ¶¶ 10, 15.)

On March 2, 2020, Plaintiff went to the MD-line and was seen by Defendant RJD Dr. Casian who, "following in the footsteps of defendants Corleone and Chau in lying and fabricating on CDCR documents," found "the gross alignment of the spine is within normal limits," and refused "to believe plaintiff has serious back problems that caused him to fall multiple times."   (*Id*. ¶¶ 20, 64.)   Defendant RJD RN Sazon "aided and abetted" that deliberate indifference to his serious medical needs by rejecting his 602 grievances against Drs. Corleone and Chau, falsely claiming they were duplicative.   (*Id*. ¶¶ 13, 21, 70.)   He filed a 602 grievance against Nurse Sazon for denying his 602 grievances.   (*Id*. ¶ 22.)

On December 31, 2019, Plaintiff made a "Reasonable Accommodation Request" in which he identified what "he is unable to do because of the serious back problem that he

has," and in which he requested steroid injections, an egg-crate mattress, a "no full duty chrono," a high medical risk classification, a morphine prescription, and referral to an orthopedist. (*Id*. ¶ 23.)  He alleges Defendant Armenta, an RJD Associate Warden and ADA coordinator, was "personally involved in [the] decision regarding plaintiff's treatments by aiding and abetting defendant medical doctors who acted with deliberate indifference to plaintiff's serious medical needs." (*Id*. ¶¶ 24, 67.)  A Reasonable Accommodation Panel meeting took place on January 16, 2020, during which Defendant Adrian, an RJD Compliance Analyst and Health Care Grievance Representative, "could have intervened and should have intervened," but instead aided and abetted the doctor Defendants in their deliberate indifference to his serious medical needs by denying his requests and finding "no interim accommodation required." (*Id*. ¶ 26, 87.)

On January 28, 2020, Defendant Dr. Schultz, an RJD Radiologist, "engaged in fraud" by redacting the report of Plaintiff's x-ray, falsely stating that Plaintiff's spine is "within normal limits," and diagnosing his condition as "mild degenerative spondylosis," which Plaintiff states is similar to arthritis, thereby aiding and abetting the deliberate indifference of the medical doctors. (*Id*. ¶¶ 27, 66.)  He alleges that because the diagnoses of his "sixteen different back problems are changed to a simple matter of spondylosis or arthritis," his requests for a back brace, morphine, referral to an orthopedic specialist or surgeon, an MRI, a CT-scan, and physical therapy were all denied. (*Id*. ¶ 28.)  He states that a "handful of defendant" medical doctors and nurses told him: "All you have is arthritis.  We do not provide 'back brace' or morphine for people with arthritis." (*Id*.) He claims to have tried numerous pain medications and creams, none of which are effective to alleviate his pain other than morphine or fentanyl, and although doctors at the University of California, Davis recommended Gabapentin, he was refused that medication in violation of California Prison Health Care Services Pain Management Guidelines. (*Id*. ¶ 29.)

On March 25, 2020, Defendant RN Beltran wrote in progress notes in Plaintiff's medical file that he complained of unresolved chronic lower back pain. (*Id*. ¶¶ 30.)  He then submitted health care request forms to Defendants RJD Chief Medical Executive Dr.

Roberts, RJD Chief Physicians and Executive Surgeons Drs. Hodges and Barenchi, and RJD Drs. Messler, Clayton, Guldseth, Mohamed, Santos and Luu, all of whom "personally involved themselves in decisions regarding plaintiff's treatment, which they've acted with deliberate indifference to plaintiff's serious medical needs resulting in further significant injuries and caused unnecessary and wanton infliction of pain." (*Id*. ¶¶ 30-31, 62-64.) Plaintiff went to the MD-line on April 3, 2020, complaining his back had given out and he had fallen and was seen by Dr. Luu, who diagnosed his condition as "muscle pain/strain," and told Plaintiff: "It's just a sprain, it'll go away by itself within 3 weeks." (*Id*. ¶ 31.) He claims Dr. Luu knew or should have known that the failure to correctly diagnose his condition as Quervain's tenosynovitis presented a substantial risk to his health. (*Id*.) He saw Dr. Luu again on April 20, 2020, who disregarded that risk by denying Plaintiff's requests for an epidural steroid injection and an egg-crate mattress. (*Id*.)

On April 17, 2020, Defendant RJD Radiologist Dr. Laufik, "in order to aid and abet defendant Dr. Luu['s] extreme departure from standard of practice so that he can harm plaintiff by denying treatment altogether," "illegally engaged in fraud" when he "heavily redacted" a report of an x-ray of Plaintiff's wrist, and told Plaintiff, "your test results are essentially within normal limits. No provider follow-up is required." (*Id*. ¶¶ 32, 66.) In June 2020, Plaintiff filed medical requests regarding injuries resulting from falls and was seen by Defendants RJD Drs. Chau, Corleone, Casian, Luu, Silva, Sedighi, Santos, Guldseth and Mohamed, and by Defendant RJD Nurse Practitioner Pahsa, all of whom "dismissed the whole thing as irrelevant and ended the MD-line each and every time," and told Plaintiff "all you have is just arthritis of the back." (*Id*. ¶ 33-34, 64, 69.)

Plaintiff states that although he has never been seen by Defendants RJD Drs. Saidro, Zhang, Messler, Clayton, Roberts, Hodges and Barenchi in person, he seeks to hold them liable as supervisors of the Defendants who examined him in person, and any treatment requires the approval of Drs. Barenchi and Hodges. (*Id*. ¶¶ 35, 62-64.) He alleges Dr. Luu ordered a steroid injection but Drs. Barenchi and/or Hodges denied the injection. (*Id*. ¶ 35.) He states that Drs. Chau, Corleone, Casian, Luu, Silva, Sedighi, Santos, Saidro, Guldseth,

21cv2113-CAB (JLB)

Mohamed, Zhang, Messler, Clayton, Roberts, Hodges and Barenchi "have more than once went to physician committee where they discussed plaintiff's multiple complaints concerning his severe back pain and multiple back problems, whereupon, defendants are steadfast on their diagnosis of 'mild degenerative spondylosis.'" (*Id*.)

Plaintiff states he was denied an ice pack for his wrist by Drs. Luu, Santos and Corleone and Nurse Practitioner Pasha, who told him "there's no indication for it." (*Id*. ¶ 36.) Plaintiff states that an MRI he received August 18, 2020, was "deliberately delay[ed] for months," and Defendant RJD Radiologist Dr. Waters fraudulently redacted the MRI results and failed to correctly diagnose his wrist problem as Quervain's tenosynovitis, which caused him to be denied an ice pack and have a cortisone injection delayed for six months. (*Id*. ¶ 37.) From May 6, 2020, to April 30, 2021, Plaintiff submitted 31 health care requests complaining of wrist pain. (*Id*. ¶ 38.) The diagnosis of Quervain's tenosynovitis was eventually confirmed by Dr. Waters, yet Drs. Waters, Luu, Santos, Corlone, Silva, Guldseth, Mohamed, Chau and Sedighi and Nurse Practitioner Pasha continued to deny his requests for morphine and an ice pack. (*Id*.) Plaintiff's Quervain's tenosynovitis condition became chronic, and a March 23, 2021, corticosteroid injection came too late to be effective. (*Id*.) The MRI also showed Plaintiff had wrist joint and intercarpal arthritis but Drs. Waters and Luu deliberately failed to inform Plaintiff of that condition to prevent him from requesting treatment. (*Id*. ¶ 39.) Plaintiff states that he has filed many complaints but no lawsuits, which have "emboldened defendants to take away treatments for plaintiff's hypercholesterolemia," which placed him at a risk of death from a stroke or heart attack, and to take away treatments for his osteopenia which without treatment leads to irreversible osteoporosis. (*Id*. ¶ 40.) He claims Nurse Sazon rejected his August 19, 2020, 602 grievance against Dr. Luu in order to aid and abet deliberate indifference to his serious medical needs. (*Id*. ¶ 41.)

On November 11, 2020, Plaintiff filed a 602 grievance against the Reasonable Accommodation Panel complaining that Defendant Anderson, an RJD Associate Warden and ADA Coordinator, and Defendant Kendall, a RJD Health Care Compliance Analyst,

agreed with the doctor Defendants that his accommodation request for an egg-crate mattress should be denied. (*Id.* ¶¶ 42, 67, 87.) He filed a 602 grievance on September 17, 2020, complaining that his high cholesterol problem was getting worse, but Defendant RJD RN Sousley denied the grievance and "elected to stand by" as the Defendant medical doctors denied requested prescriptions. (*Id.* ¶¶ 43, 70.) Plaintiff alleges that Dr. Luu "and other defendant doctors" discontinued his prescription for atorvastatin calcium that treats his "osteopenia problem," resulting in six months without that prescription. (*Id.* ¶ 44.) He alleges that "it is quite obvious defendants [are] out to do harm against plaintiff in retaliation for all the complaints he filed and threats of lawsuit." (*Id.* ¶ 45.) When Plaintiff requested an alternative treatment for his osteopenia, Dr. Luu denied his request for the liquid nutrition supplement Ensure, leaving no treatment, and told Plaintiff "there's no indication that you have osteopenia." (*Id.* ¶¶ 46, 48.) His May 17, 2021, 602 grievance complaining of the discontinuation of his calcium supplement was rejected by Nurse Sazon. (*Id.* ¶ 47.) Plaintiff states that his hypogonadism was treated with weekly testosterone injections "he had been given on a regular basis since 2015," but on September 9, 2021, Dr. Luu suspended the testosterone injections. (*Id.* ¶ 49.)

Plaintiff alleges he was threatened by Defendants RJD RNs Millan and Barajas with disciplinary action if he continued to submit health care requests on the same issues. (*Id.* ¶¶ 50, 52, 70.) On July 23, 2021, Defendant RJD Supervising RN Sanchez "tried to cover up their illegal activities by saying 'the communication was likely misinterpreted and the intent was to educate him regarding ongoing care and appeals process.'" (*Id.* ¶¶ 51, 75.) That statement allegedly emboldened the Defendant doctors and nurses "to begin their sick twisted conviction to take away medications and treatments that plaintiff had been receiving for years," and to prevent a trail of evidence created by multiple health care grievances on the same issues. (*Id.* ¶ 51.) He alleges Defendant RJD Chief Medical Officer Glynn "personally involved herself in violating Plaintiff's right to adequate medical care by instituting a toxic environment of directing medical doctors under her leadership to practice deliberate indifference to Plaintiff's serious medical needs." (*Id.* ¶ 7.)

21cv2113-CAB (JLB)

Plaintiff states that every month a meeting referred to as a "Population Management Working Session" is held "where all the medical doctors, nurses, and supervisors come together" to discuss inmate patients.  (*Id*. ¶ 53.)  Plaintiff alleges that at one time or another 84 of the 98 named Defendants participated in those meetings with deliberate indifference to his serious medical needs, but without any factual allegations supporting that conclusory statement.  (*Id*.)  Those Defendants include Armenta, Glynn, Roberts, Hodges, Barenchi, Luu, Chau, Corleone, Silva, Mohamed, Waters, Casian, Laufik, Anderson, Santos, Guldseth, Pahsa, Millan, Sazon, Barajas, Sanchez, Beltran, Clayton, Messler, Zhang, Saidro, Sedighi, Schultz and Sousley, all identified above, along with Defendants RJD Radiologist Dr. Brown, RJD Chief Support Executive Alanis, RJD RNs Viernes, Tuason, Liuato, Ruiz, N. Mendoza, A. Mendoza, Chanthalangsy, Valencia, Stepheson, Lopez, Wexman, Carneal, Austria, Pak, Paragas, McCann, Topalov, Ivory and Morera, RJD Supervising RNs Garcia and Baun, RJD LVNs Sihotang, Inglesias, Hughes, Pool, Canela, Webb, Sagiao, Inzunza, Vincent, Hawthorne, Mesina, Stark, McElroy, Tran, Burganas, Santillan, Divina, Eras, Letuligasenoa, Edgar, Ocegueda and Abedeen, RJD Certified Nurse Assistant Razcon, "OT"s Denton, Joseph, Sillas, Perez and Hernandez, RJD Chief Nurse Executive Tenorio, "RND" Basto, RJD Health Care Captain Martinez, "E.OA" Zamora, and RJD Physical Therapist Domingo.  (*Id*.)  He claims these Defendants had numerous opportunities to intervene to see to it that he received adequate medical treatment but "consistently elected to put in their rote aiding and abetting" of denial of medical care "in par to community standard of care."  (*Id*. ¶ 54.)

Plaintiff alleges he has "written a fair amount of letters" to Defendants RJD Wardens Pollard and Madden, CDCR Secretaries Diaz and Allison, RJD Chief Deputy Warden Buckel, Director of Corrections Services Foss and Director of the Division of Adult Institutions Gipson, complaining of the medical treatment he has received at RJD.  (*Id*. ¶ 55.)  He claims that although they, along with Defendants RJD Associate Warden Palmer and Chief of Health Care for the CDCR Gates, have "ultimate authority" over the other Defendants, they "willfully and wantonly failed to take reasonable action to summon such

medical care" and "recklessly allowed the Constitutional violations to continue." (*Id*. ¶¶ 55-57.)  Finally, Plaintiff claims Defendant Dr. Tung, a neurosurgeon at Tri-City Hospital, and Defendant Dr. Hofmeister, an orthopedic hand surgeon at Alvarado Hospital, committed medical malpractice. (*Id*. ¶¶ 59-60, 65, 80.)

Plaintiff claims the actions of the Defendants violated his rights to be free from cruel and unusual punishment under the Eighth Amendment, to equal protection under the Fourteenth Amendment, and to reasonable accommodations under the ADA, and that they constitute the state torts of fraud, personal injury, breach of contract, medical malpractice and intentional infliction of emotional distress. (*Id*. ¶ 1.)

### C.   Analysis

#### 1. Eighth Amendment Claim

The prohibition on the infliction of cruel and unusual punishment embodied in the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations of severe pain and debilitating injuries resulting from his back and wrist conditions satisfy the serious medical need prong of an Eighth Amendment claim sufficiently to survive the screening required by 28 U.S.C. § 1915A. *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a

reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

However, the First Amended Complaint fails to plausibly allege that any Defendant acted with deliberate indifference to Plaintiff's serious medical needs.  The deliberate indifference prong of an Eighth Amendment violation regarding medical care "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  To plausibly allege deliberate indifference, "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004), quoting *Farmer*, 511 U.S. at 837.  Allegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation.  *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim); *Toguchi*, 391 F.3d at 1058 (disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [plaintiff]'s serious medical needs."); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983].)

Plaintiff's allegations against his treating physicians, Drs. Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi and Silva, against the doctors who read his x-rays and MRI, Drs. Waters, Schultz and Laufik, and the Nurses who saw him in person,

Pasha and Beltran, allege no more than a disagreement with the diagnoses of and appropriate course of treatment for his medical conditions.  Plaintiff alleges Dr. Corleone examined him and diagnosed his back condition differently than other doctors who had previously examined him.  (ECF No. 11 at ¶¶ 10-12.)  He alleges he was examined by Dr. Chau who agreed with Dr. Corleone's diagnosis and independently diagnosed Plaintiff as having chronic back pain without radiculopathy, even though Plaintiff claims his back pain is radiculopathy, and on the basis of that diagnosis denied Plaintiff's requests for morphine, a CT scan and an MRI.  (*Id*. ¶¶ 15-16, 18.)  Plaintiff alleges Dr. Casian agreed with the diagnoses of Drs. Corleone and Chau, and independently found "the gross alignment of the spine is within normal limits."  (*Id*. at ¶¶ 20.)  Plaintiff alleges that Dr. Luu, based on an examination, misdiagnosed his injuries and determined his cholesterol levels were normal, and based on that diagnosis denied him a steroid injection, an ice pack, a calcium supplement, morphine, and suspended his weekly testosterone injections.  (*Id*. ¶¶ 31, 36, 38, 46, 48.)  Plaintiff alleges Dr. Guldseth examined him and discontinued his calcium supplement, and that Drs. Santos, Mohammed, Silva and Sedighi agreed with the diagnoses of the other doctors after they examined him, independently diagnosed him with "arthritis of the back," and refused him morphine and an ice pack.  (*Id*. ¶¶ 34, 38.)  Plaintiff alleges Drs. Waters, Schultz and Laufik misread his x-rays and MRI and failed to properly diagnose his condition resulting in the denial of an ice pack, that Nurse Pasha relied on the medical opinions from those doctors to deny Plaintiff an ice pack, and that Nurse Beltran correctly noted that Plaintiff complained of back pain.  (*Id*. ¶¶ 27, 30, 32, 36-39.)  Plaintiff has not stated an Eighth Amendment claim arising from his disagreement with the diagnoses of his treating medical providers or the differing opinion of other doctors.  *See Toguchi*, 391 F.3d at 1058 (disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Sanchez*, 891 F.2d at 242 ("A difference of opinion does not amount to a deliberate indifference to [plaintiff]'s serious medical needs."); *Mayfield*, 433 F.2d at 874 ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary" does not state a claim).

21cv2113-CAB (JLB)

Although Plaintiff cannot establish an Eighth Amendment violation based solely on disagreements with his doctors or between doctors, deliberate indifference can be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058. "Deliberate indifference is a high legal standard." *Id.* at 1060. Plaintiff has failed to allege deliberate indifference under this standard because there are no facts in the First Amended Complaint from which the Court could plausibly infer that any treating Defendant deliberately and knowingly chose a course of medical treatment in conscious disregard to an excessive risk to his health. Rather, Plaintiff alleges he was examined by the treating Defendants in response to his complaints of back pain, wrist pain and falling down, and received x-rays, an MRI and other treatments. Although he claims a six-month delay in treating his wrist with a cortisone injection caused his condition to be irreversibly worsened, that allegation, along with his other allegations of misconduct by the treating Defendants, such as the allegations they redacted reports of his x-rays and MRI, failed to include in their medical reports all of the symptoms he reported, or produced fraudulent medical records simply by recording their diagnoses, do not plausibly allege they knew of a substantial risk to his health by delaying or denying treatment, but are all based on what Plaintiff claims is a failure to properly and timely diagnose his condition. Accordingly, the allegations in the First Amended Complaint fail to state an Eighth Amendment claim against Defendants Drs. Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi, Silva, Waters, Schultz, Laufik, and Nurses Pasha and Beltran. *See Estelle*, 429 U.S. at 106 (inadvertent failure to provide medical care, mere negligence or medical malpractice do not state an Eighth Amendment claim); *Toguchi*, 391 F.3d at 1058 (finding that a disagreement over the necessity or extent of medical treatment does not show deliberate indifference).

Plaintiff seeks to hold a number of Defendants liable for failing to supervise the treating medical Defendants. He alleges Defendants CDCR Secretaries Allison and Diaz, RJD Wardens Pollard and Madden, RJD Chief Deputy Warden Buckel, RJD Associate

Warden Palmer, Chief of Health Care for the CDCR Gates, Director of Corrections Services Foss, and Director of the Division of Adult Institutions Gipson, have "ultimate authority" over those who allegedly denied him adequate medical care, and are liable for the lack of care because they "willfully and wantonly failed to take reasonable action to summon such medical care" and "recklessly allowed the Constitutional violations to continue." (ECF No. 11 at ¶ 55-57.)  Plaintiff states he has never been seen by Defendants RJD Drs. Saidro, Zhang, Messler, Clayton, Roberts, Hodges and Barenchi in person, but seeks to hold them liable as supervisors of the doctors who examined him.  (*Id.* ¶¶ 35, 62-64.)  He alleges Defendant RJD Chief Medical Officer Glynn "personally involved herself in violating Plaintiff's right to adequate medical care by instituting a toxic environment of directing medical doctors under her leadership to practice deliberate indifference to Plaintiff's serious medical needs."  (*Id.* ¶ 7.)

Supervisory liability is not an independent cause of action under § 1983, and in order to state a § 1983 claim against supervisory personnel Plaintiff must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).

/ / /

21cv2113-CAB (JLB)

As currently pleaded, there are no factual allegations in the Complaint which, if proven true, would establish that Defendants Allision, Diaz, Madden, Pollard, Buckel, Gipson, Glynn, Gates, Palmer, Foss, Saidro, Zhang, Messler, Clayton, Roberts, Hodges or Barenchi, in conscious disregard to an excessive risk to Plaintiff's health, were aware Plaintiff was not receiving constitutionally adequate medical care, and what actions they took, or were required to take but failed to take, which plausibly allege they deliberately disregarded such a risk.  Rather, Plaintiff merely alleges these Defendants were aware he disagreed with the diagnoses and treatment he received from the treating medical Defendants and should have intervened.  Because he has failed to plausibly allege the medical treatment he received was constitutionally inadequate, he has failed to plausibly allege they knew of and deliberately disregarded a serious risk to his health, or that their failure to intervene caused or was necessary to prevent a constitutional violation.  *Farmer*, 511 U.S. at 837 (the prison official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists [and] must also draw the inference."); *Toguchi*, 391 F.3d at 1058 (deliberate indifference can be shown where the course of medical treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health.")

Likewise, Plaintiff's allegation that several Defendants "went along with" the diagnoses of the treating physicians and could have or should have intervened but did not, fails to plausibly allege an Eighth Amendment violation.  Plaintiff alleges Defendants RJD Associate Warden Anderson and RJD Health Care Grievance Compliance Officer Kendall agreed with the treating doctors' diagnoses and refused Plaintiff an egg-crate mattress. (ECF No. 11 at ¶ 42.)  He alleges Nurses Sazon and Sousley had numerous opportunities to intervene and see to it that plaintiff received adequate medical care but rejected several 602 grievances and "stood by" as the treating medical doctors misdiagnosed his condition, that he was threatened with disciplinary action by Nurses Millan and Barajas if he did not stop filing duplicative health care requests, and that Nurse Sanchez tried to cover up those threats by stating untruthfully that Millan and Barajas were merely advising Plaintiff how

to properly file requests for medical care.  (*Id*. ¶¶ 13, 26, 22, 43, 50-52.)  Plaintiff alleges Defendants Drs. Roberts, Hodges, Barenchi, Messler, Clayton, Saidro, Zhang, whom he states he never saw, failed to intervene and reverse the diagnoses and treatment plans of the treating physicians, as did the Defendants who participated in the Population Management Working Session, including Defendants Glynn, Roberts, Hodges, Barenchi, Luu, Chau, Corleone, Silva, Mohamed, Waters, Casian, Laufik, Anderson, Santos, Guldseth, Pahsa, Millan, Sazon, Barajas, Sanchez, Beltran, Clayton, Messler, Zhang, Saidro, Seighi, Schultz, Sousley, Brown, Alanis, Viernes, Tuason, Liuato, Ruiz, N. Mendoza, A. Mendoza, Chanthalangsy, Valencia, Stepheson, Lopez, Wexman, Carneal, Austria, Pak, Paragas, McCann, Topalov, Ivory, Morera, Garcia, Baun, Sihotang, Inglesias, Hughes, Pool, Canela, Webb, Sagiao, Inzunza, Vincent, Hawthorne, Mesina, Stark, McElroy, Tran, Burganas, Santillan, Divina, Eras, Letuligasenoa, Edgar, Ocegueda, Abedeen, Razcon, Denton, Joseph, Sillas, Perez, Hernandez, Tenorio, Basto, Martinez, Zamora, and Domingo.  (*Id*. ¶ 53.)

The allegation that these Defendants participated in the alleged deliberate indifference of the treating physicians by failing to intervene when faced with Plaintiff's complaints that in his opinion he was misdiagnosed by the treating physicians, fails to plausibly allege an Eighth Amendment violation because Plaintiff has not plausibly alleged the treatment he received violated the Eighth Amendment.  *See Estelle*, 429 U.S. at 106 (inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim).  In order to state an Eighth Amendment claim against any of these Defendants, Plaintiff must set forth facts which plausibly allege they were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and actually drew that inference.  *Farmer*, 511 U.S. at 837.  Plaintiff has not plausibly alleged they were aware of facts from which an inference could be drawn that he faced a serious risk to his health since he has not plausibly alleged he was receiving unconstitutional medical care.  *Id*.; *see also Johnson*, 588 F.2d at 743 ("A person 'subjects' another to the

deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.")

Plaintiff alleges he was threatened with disciplinary action for filing grievances and medical requests but does not allege he was ever disciplined. (ECF No. 11 at ¶¶ 50-52.) Such an allegation fails to state a § 1983 Eighth Amendment claim. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong.") He also alleges in an entirely conclusory fashion that "it is quite obvious defendants [are] out to do harm against plaintiff in retaliation for all the complaints he filed and threats of lawsuit." (*Id*. ¶ 45.) Such a conclusory allegation fails to state a § 1983 claim. *See Iqbal,* 556 U.S. at 678 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard for pleading a § 1983 claim); *Hentz v. Ceniga*, 402 Fed.Appx. 214, 215 (9th Cir. 2010) (conclusory allegations of retaliation are insufficient to state a claim).

Accordingly, the Court *sua sponte* dismisses the Eighth Amendment claims in the First Amended Complaint for state a claim pursuant to 28 U.S.C. § 1915A. *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678; *Farmer*, 511 U.S. at 837.

## 2. ADA Claims

Plaintiff alleges he made a reasonable accommodation request explaining what "he is unable to do because of the serious back problem that he has," which included requests to see an orthopedist, for steroid injections, an egg-crate mattress, a "no full duty chrono," a high medical risk classification, and a morphine prescription. (ECF No. 11 at ¶ 23.) He alleges Defendant RJD ADA Coordinator Armenta was personally involved in the decision regarding that request and was deliberately indifferent to Plaintiff's serious medical needs, although there are no allegations regarding what actions Armenta took or was required to take in that regard. (*Id*. ¶¶ 24, 67.) He alleges Defendant RJD Compliance Analyst Adrian "could have intervened and should have intervened," during an accommodation panel

16

meeting, but instead aided and abetted the doctor Defendants by denying his requests.  (*Id.* ¶ 26, 87.)  He alleges his requests for a back brace, morphine, referral to an orthopedic specialist or surgeon, an MRI, a CAT-scan, and physical therapy were all denied because a "handful of defendant" medical doctors and nurses told him: "All you have is arthritis. We do not provide 'back brace' or morphine for people with arthritis." (*Id.* ¶ 28.)

The ADA applies in the prison context.  *See* 42 U.S.C. § 12131(1)(B); *U.S. v. Georgia* 546 U.S. 151, 154 (2006).  In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007).

Plaintiff may not pursue an ADA claim against the individual Defendants in their individual capacities.  *See Walsh v. Nevada Dep't of Human Res*., 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities.")  The CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  But because Plaintiff names only individuals as Defendants, he fails to state an ADA claim upon which relief can be granted.  *Id.*; *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.")  In any case, Plaintiff's allegations of disagreement with his medical treatment and discontinuation of his medication, although potentially cognizable under the Eighth Amendment, are unlikely to state an ADA claim simply by being recast as an ADA

claim.  *See e.g. Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) (noting that the ADA does not set forth a standard of care for medical treatment), citing *Olmstead v. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not hold in this opinion that the ADA imposes on the States a 'standard of care' for whatever medical services they render . . .")  Plaintiff has also failed to allege facts from which a plausible inference could be drawn that Defendants' actions were taken "by reason of his disability," as opposed to legitimate disagreements regarding his diagnosis and the proper course of treatment.  *O'Guinn*, 502 F.3d at 1060.

The Court dismisses the ADA claims from the First Amended Complaint *sua sponte* for failure to state a claim.  *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678.

### 3.  Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985).  A plaintiff can state an equal protection claim by setting forth facts which plausibly allege a defendant intentionally discriminated against him or her based on his membership in a protected class.  *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.")

To the extent Plaintiff claims he received different medical treatment than persons who are not incarcerated he has not alleged membership in a protected class.  *See United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) ("[N]either prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes."), quoting *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin, [and] sex" as examples of characteristics protected by the Equal Protection Clause).

An equal protection claim can be brought under a "class of one" claim where Plaintiff is treated differently than similarly situated individuals without a rational basis for

the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'"), quoting *Olech*, 528 U.S. at 564. However, there are no allegations in the First Amended Complaint which plausibly suggest Plaintiff was treated differently than anyone else or that he was treated arbitrarily. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("[T]he plaintiff in a 'class of one' case does not allege that the defendants discriminated against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.")

Accordingly, the Court *sua sponte* dismisses Plaintiff's Fourteenth Amendment equal protection claim from the First Amended Complaint for failure to state a claim. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678.

### 4. Medical Malpractice Claims

Plaintiff alleges Defendant Dr. Tung, a neurosurgeon at Tri-City Hospital, and Defendant Dr. Hofmeister, an orthopedic hand surgeon at Alvarado Hospital, committed medical malpractice by redacting a medical report and regarding medical treatment of his hand. (ECF No. 11 at ¶ 59-60, 65, 80.) He also seeks to bring claims for state torts of fraud, personal injury, breach of contract, and infliction of emotional distress. (*Id*. ¶ 1.)

A Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims.") The Court declines to exercise supplemental jurisdiction over any state law claims at this time.

21cv2113-CAB (JLB)

### D.    Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend to attempt to address the pleading deficiencies identified in this Order.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## II.    Conclusion and Order

Good cause appearing, the Court **DISMISSES** Plaintiff's First Amended Complaint (ECF No. 11) pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted.  Plaintiff's Second Amended Complaint must be complete by itself without reference to any prior version of his pleading, and any defendants not named and any claims not re-alleged will be considered waived.  *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  April 11, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge

21cv2113-CAB (JLB)