UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG DUONG NGUON, CDCR #K-49649, <br><br>                                  Plaintiff, <br><br> vs. <br><br> MARY ANNE GLYNN, et al., <br><br>                                  Defendants. | Case No.:  21cv2113-CAB (JLB) <br><br> **ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO 28 U.S.C. § 1915A** |

Plaintiff Hung Duong Nguon, a state prisoner confined at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, has paid the civil filing fee and filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 16.)  Plaintiff claims he received inadequate medical care in violation of the Eighth Amendment and the Americans with Disabilities Act ("ADA").  (*Id*. at 1-24.)

**I.     Background**

Plaintiff's initial Complaint, which named 98 Defendants and was nearly 700 pages long, was rejected for failure to comply with this Court's General Order 653a.  (ECF Nos. 1-2.)  He thereafter filed a First Amended Complaint which named the same 98 Defendants and claimed violations of the Eighth Amendment's prohibition on deliberate indifference to serious medical needs, equal protection, the ADA, and state law medical malpractice.

(ECF No. 11.) The Court screened the First Amended Complaint as required by 28 U.S.C. § 1915A, which provides that a court must sua sponte dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. (ECF No. 12.) The Court found the First Amended Complaint failed to state an Eighth Amendment claim because it alleged a disagreement with the diagnosis and treatment of his medical conditions rather than deliberate indifference to a serious medical need, failed to state an ADA claim for lack of a proper Defendant and because it did not allege any actions were taken because of a disability, failed to state an equal protection claim because there were no allegations of unequal or arbitrary treatment, and the Court declined to exercise supplemental jurisdiction over the state law medical malpractice claim. (*Id*. at 9-19.) The First Amended Complaint was dismissed with leave to amend and Plaintiff was notified of those pleading deficiencies and instructed that any defendants not re-named and any claims not re-alleged would be considered waived. (*Id*. at 20.)

Plaintiff has filed a Second Amended Complaint in which he brings his Eighth Amendment claim against 36 of the original 98 Defendants and adds the California Department of Corrections and Rehabilitation ("CDCR") as a Defendant for his ADA claim. (ECF No. 16.) Plaintiff was granted leave to exceed the page limitations and has submitted Exhibits in support of the Second Amended Complaint. (ECF Nos. 17-18.)

**II.    Screening pursuant to 28 U.S.C. § 1915A**

    **A.    Standard of Review**

Because Plaintiff is a prisoner his Second Amended Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915A. Under that statute, the Court must sua sponte dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

The standard for determining whether a prisoner has failed to state a claim upon which relief can be granted under § 1915A "incorporates the familiar standard applied in

the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### B. Allegations in the Second Amended Complaint

Plaintiff alleges he went to the "MD-line" on December 27, 2019, where Defendant RJD Dr. Corleone examined him and "lied and fabricated on CDCR documents" that Plaintiff did not have a compression fracture of his spine and lumbar spine scoliosis, even though "a handful of medical doctors" had previously diagnosed those conditions. (ECF No. 16 ¶ 3.) He alleges his severe chronic back pain was left untreated by Dr. Corleone causing his condition to worsen to the point where his back goes out causing him to "fall hard to the ground," and that he has debilitating pain when he walks, stands, sits or bends, as well as numbness, tingling and weakness in his back and legs, and loss of control of his bladder and bowels. (*Id.*)

On January 6, 2020, Plaintiff went to the MD-line again and was seen by Defendant RJD Dr. Chau "who 'upheld' the 'fabrication of CDCR documents in conjunction with' Dr. Corleone." (*Id.* ¶ 4.) "Plaintiff states that although he has 'pain that's radiculopathy,' Dr. Chau 'lied and fabricated on CDCR documents' that he has 'chronic back pain without radiculopathy,' and based on that diagnosis denied his requests for morphine, a CT-Scan and an MRI." (*Id.*) Dr. Chau also allegedly deleted spinal scoliosis from the "problem list" of Plaintiff's ongoing medical conditions and falsely claimed he did not show acute distress or grimacing. (*Id.*) He contends that doctors specializing in spinal problems at the University of California, Davis ("UC Davis") have diagnosed him with "chronic-appearing vertebral body height loss," "multilevel disk degeneration within the thoracic spine," "hypodense faci within multiple vertebral bodies (with) coarsened trabeculae, possibly

representing osseous hemangiomas," "facet arthropathy," "disc bulge with intervertebral disc height loss," "bilateral facet arthropathy with small left facet joint effusion," and "focal protrusion with small annular fissure into the right lateral recess." (*Id*.) Attached to the Second Amended Complaint are medical records from UC Davis. (ECF No. 18, Exs. 4, 7.) He states that several other doctors have diagnosed him with lumbar spinal scoliosis with gross thoracic kyphosis. (*Id*.) After Plaintiff saw Dr. Chau again on January 14, 2020, Dr. Chau allegedly falsified medical records to reflect that Plaintiff did not complain of a "decubitus ulcer in the buttocks or sacrum area" with pressure sores, and then "denied every request that Plaintiff asked for." (*Id*.) Plaintiff filed inmate grievances against Drs. Corleone and Chau. (*Id*.) Attached as Exhibits to the Second Amended Complaint are copies of Plaintiff's RJD medical records. (ECF No. 18, Exs. 1-3, 5-6, 8-14.)

On March 2, 2020, Plaintiff went to the MD-line and was seen by Defendant RJD Dr. Casian who, "following in the footsteps of defendants Corleone and Chau in lying and fabricating on CDCR documents," found "the gross alignment of the spine is within normal limits," and refused "to believe plaintiff has serious back problems that caused him to fall multiple times." (*Id*. ¶ 5.) Defendant RJD RN Sazon interviewed Plaintiff numerous times regarding inmate grievances against Drs. Corleone, Chau, Casian, Silva, Luu, Mohamed, Santos, Guldseth, Sedighi, Clayton, Roberts, Hodges and Barenchi, and Nurse Pasha, but aided and abetted those doctors and nurses by failing to intervene. (*Id*. ¶ 6.) He filed an inmate grievance against Nurse Sazon for rejecting those grievances. (*Id*.)

On December 31, 2019, Plaintiff made a "Reasonable Accommodation Request" in which he identified what "he is unable to do because of the serious back problem," and in which he requested steroid injections, an egg-crate mattress, a "no full duty chrono," a high medical risk classification, a morphine prescription, and referral to an orthopedist. (*Id*. ¶ 7.) He claims Defendant CDCR violated the ADA when it denied him those reasonable accommodations. (*Id*.)

On January 28, 2020, Defendant Dr. Schultz, an RJD Radiologist, "engaged in fraud" by redacting the report of Plaintiff's x-ray, falsely stating that Plaintiff's spine is

"within normal limits," and diagnosing his condition as "mild degenerative spondylosis," which Plaintiff states is similar to arthritis, thereby aiding and abetting the deliberate indifference of the medical doctors. (*Id*. ¶ 8.) He alleges that because the diagnoses of his "sixteen different back problems are changed to a simple matter of spondylosis or arthritis," his requests for a back brace, morphine, referral to an orthopedic specialist or surgeon, an MRI, a CT-scan, and physical therapy were all denied. (*Id*.) He states that a "handful of defendant" medical doctors and nurses told him: "All you have is arthritis. We do not provide 'back brace' or morphine for people with arthritis." (*Id*.) He claims to have tried numerous pain medications and creams, none of which are effective to alleviate his pain other than morphine or fentanyl, and although doctors at the UC Davis recommended Gabapentin, he was refused that medication in violation of California Prison Health Care Services Pain Management Guidelines. (*Id*.) Plaintiff acknowledges Drs. Corleone, Casian, Santos, Luu and Sedighi each granted his request to review the medical reports from the UC Davis doctors, "thoroughly" reviewed his medical records, and explained to him the reasons for their diagnosis and treatment plans during their "numerous" consultations, which typically lasted "for about 15 to 30 minutes, and on a few occasions it lasted for over an hour," and on at least one occasion "perhaps even two hours." (*Id*. ¶¶ 12-17, 19-20.) He alleges his requests to his treating physicians Drs. Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi and Silva for opioid pain medication, an egg crate mattress, a wheelchair, cortisone treatments, a back brace and ice packs were repeatedly denied on the basis they did not think they were "medically necessary" because they have diagnosed Plaintiff with arthritis, thus effectively denying any treatment other than Tramadol. (*Id*. ¶¶ 12-21.) Plaintiff submitted multiple health care service request forms to Defendants RJD Drs. Hodges, Barenchi, Roberts, Messler, Clayton, Guldseth, Mohamed, Santos and Luu complaining of severe chronic back pain. (*Id*. ¶ 9.) He alleges they allowed him to suffer severe pain with no treatment and consciously allowed his back to weaken and give out again and again resulting in serious injuries. (*Id*.) Plaintiff submitted a medical request on April 3, 2020, complaining he fell to the ground when his

back went out and injured his wrist. (*Id.* ¶ 10.) He went to the MD-line on April 15, 2020, where Dr. Luu misdiagnosed his wrist injury as "muscle pain/strain." (*Id.*) On April 17, 2020, Defendant RJD Radiologist Dr. Laufik, "in order to aid and abet defendant Dr. Luu's extreme departure from standard of practice so that he can harm plaintiff by denying treatment altogether," "illegally engaged in fraud" when he "heavily redacted" a report of an x-ray of Plaintiff's wrist. (*Id.* ¶ 11.) His requests for an ice pack for his wrist were denied for six months. (*Id.*) Plaintiff states that for years he had been prescribed Lisinopril for hypercholesterolemia, a calcium carbonate vitamin D supplement for osteopenia, and testosterone for hypogonadism, but they were discontinued by Dr. Luu when his blood levels "showed dangerous levels of abnormality." (*Id.* ¶ 22.)

Plaintiff alleges he has informed or written letters to Defendants RJD Wardens Pollard and Madden, RJD Chief Medical Officer Glynn, CDCR Secretaries Diaz and Allison, RJD Chief Deputy Warden Buckel, Director of Corrections Services Foss, Director of the Division of Adult Institutions Gipson and RJD Chief Physician and Executives Hodges and Barenchi, complaining of the medical treatment he has received at RJD. (*Id.* ¶¶ 23-26.) He presents copies of that correspondence (*see* ECF No. 18, Ex. 15) and claims these Defendants were aware his medical needs were unmet and were the ultimate authority acting within the scope of their employment when they failed to intervene and allowed the denial of medical care to continue. (*Id.*) He claims Defendants Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi, Silva, Saidro, Zhang, Messler, Clayton, Glynn, Roberts, Hodges, Barenchi, Hofmeister, Brown, Waters, Laufik, Pasha, Pollard, Gates, Diaz, Allison, Palmer, Howard, Tung, Martinez, Buckel, Madden, Foss, Gibson, and Schultz failed to provide or ensure he was provided adequate medical care. (*Id.* ¶¶ 27-40.) He seeks injunctive relief in the form of (1) a morphine prescription, (2) twice weekly physical therapy, (3) CT-scans and MRIs of his spine, (4) steroid injections into his spine, (5) consultations with an orthopedist, an endocrinologist and a pain management specialist, (6) an egg crate mattress, (7) a full no duty chrono and (8) a high medical classification. (*Id.* ¶ 41.)

### C. Analysis

#### 1. Eighth Amendment Claim

The prohibition on the infliction of cruel and unusual punishment embodied in the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Court found in its prior dismissal Order, as it does now, that Plaintiff's allegations of pain and injuries regarding his back and wrist conditions satisfy the serious medical need prong of an Eighth Amendment claim sufficient to survive screening under 28 U.S.C. § 1915A. *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

However, the Court found in its prior dismissal Order, as it does now, that Plaintiff has failed to plausibly allege any Defendant acted with deliberate indifference to his serious medical needs. The deliberate indifference prong of an Eighth Amendment violation regarding medical care "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To plausibly allege deliberate indifference,

"the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004), quoting *Farmer*, 511 U.S. at 837. Allegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves are not sufficient to allege an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim); *Toguchi*, 391 F.3d at 1058 (disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [plaintiff]'s serious medical needs."); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983].")

      Plaintiff's allegations against his treating physicians, Drs. Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi and Silva, against the doctors who read his x-rays and MRI, Drs. Schultz and Laufik, and Nurse Pasha, allege no more than a disagreement with the diagnoses of and appropriate course of treatment for his medical conditions. Plaintiff alleges Dr. Corleone examined him and diagnosed his back condition differently than other doctors who had previously examined him. (ECF No. 16 at ¶ 3.) He alleges he was examined by Dr. Chau who agreed with Dr. Corleone's diagnosis and independently diagnosed Plaintiff as having chronic back pain without radiculopathy, even though Plaintiff claims his back pain is radiculopathy, and on the basis of that diagnosis denied Plaintiff's requests for morphine, a CT scan and an MRI. (*Id.* ¶ 4.) He alleges Dr. Casian agreed with the diagnoses of Drs. Corleone and Chau, and independently found

"the gross alignment of the spine is within normal limits." (*Id*. at ¶ 5.) Plaintiff alleges that Dr. Luu, based on an examination and an x-ray, misdiagnosed his wrist injury and discontinued two prescriptions after his blood levels "showed dangerous levels of abnormality." (*Id*. ¶¶ 10, 22.) Plaintiff alleges Dr. Guldseth discontinued his calcium supplement after examining him, and that Drs. Santos, Mohammed, Sedighi and Silva agreed with the diagnoses of the other doctors but only after they examined him and independently diagnosed him with "arthritis of the back," and on that basis refused him morphine and an ice pack. (*Id*. ¶¶ 19-22.) Plaintiff alleges Radiologists Drs. Schultz and Laufik misread his x-rays and MRI and failed to properly diagnose his condition resulting in the denial of an ice pack, and that Nurse Pasha relied on the medical opinions from those doctors to deny an ice pack. (*Id*. ¶¶ 8, 11, 18.) However, Plaintiff acknowledges Drs. Corleone, Casian, Santos, Luu and Sedighi granted his requests to read the medical reports of the UC Davis doctors who had previously diagnosed him, "thoroughly" reviewed his medical records, and explained to him the reasons for their diagnosis and treatment plans during their "numerous" consultations which typically lasted "for about 15 to 30 minutes, and on a few occasions it lasted for over an hour," and on at least one occasion "perhaps even two hours." (*Id*. ¶¶ 12-17, 19-20.)

Plaintiff has once again failed to plausibly allege an Eighth Amendment claim arising from his disagreement with the diagnoses of his treating medical providers or that their opinions differed from those of other doctors. *See Toguchi*, 391 F.3d at 1058 (disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Mayfield*, 433 F.2d at 874 ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary" does not state a claim). Rather, Plaintiff alleges he consulted with and was examined by his treating medical providers on numerous occasions who, after reviewing his medical records including those of outside doctors, diagnosed him differently than the outside doctors, and Plaintiff personally disagrees with the diagnoses and treatments. Those allegations do not plausibly allege any Defendant knew of and deliberately disregarded his serious medical

needs. *See Farmer*, 511 U.S. at 837 (a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim); *Sanchez*, 891 F.2d at 242 ("A difference of opinion [even between prison doctors and outside physicians] does not amount to a deliberate indifference to [plaintiff]'s serious medical needs.")

Although Plaintiff cannot establish an Eighth Amendment violation based solely on disagreements with his doctors or between doctors, deliberate indifference can be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058. "Deliberate indifference is a high legal standard." *Id.* at 1060. Plaintiff has failed to allege deliberate indifference under this standard because there are no facts in the Second Amended Complaint from which the Court could plausibly infer that any treating Defendant deliberately and knowingly chose a course of medical treatment in conscious disregard to an excessive risk to his health. Rather, Plaintiff alleges he was examined numerous times in response to his complaints of back pain, wrist pain and falling down, sometimes for hours at a time, and received x-rays, an MRI and other treatments. The allegations Defendants redacted reports of his x-rays and MRI, failed to include in their medical reports every symptom he reported, or produced fraudulent medical records, all simply by recording diagnoses with which Plaintiff disagreed, do not plausibly allege they chose an unacceptable course of medical treatment in conscious disregard to an excessive risk to his health, but are all based on what Plaintiff claims is a failure to properly diagnose his condition. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Accordingly, the allegations in the Second Amended Complaint fail to state an

Eighth Amendment claim against Defendants Drs. Corleone, Chau, Casian, Luu, Guldseth, Sedighi, Silva, Schultz and Laufik or Nurse Pasha.

Plaintiff also once again seeks to hold a number of Defendants liable for failing to supervise his treating medical providers or intervene to reverse their treatment or diagnosis. He alleges he sent multiple medical health request forms to Defendants Roberts, Hodges, Barenchi, Messler, Clayton, Guldseth, Mohamed, Santos and Luu complaining of severe chronic back pain. (ECF No. 16 ¶ 9.) Plaintiff alleges he has informed or written letters to Defendants Pollard, Madden, Glynn, Diaz, Allison, Buckel, Foss, Gipson, Hodges and Barenchi complaining of the medical treatment he received at RJD, and alleges they were the ultimate authority acting within the scope of their employment when they failed to intervene and allowed the alleged denial of medical care to continue. (*Id*. ¶¶ 23-26.) He alleges Defendant Nurse Sazon interviewed him numerous times regarding his inmate grievances against Drs. Corleone, Chau, Casian, Silva, Luu, Mohamed, Santos, Guldseth, Sedighi, Clayton, Roberts, Hodges and Barenchi, and Nurse Pasha, but aided and abetted those Defendants by failing to intervene. (*Id*. ¶ 6.)

The Court notified Plaintiff in the prior dismissal Order that supervisory liability is not an independent cause of action under § 1983, and that in order to state a § 1983 claim against supervisory personnel he must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation. (*See* ECF No. 12 at 13, citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989).) "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The

inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).

There are no factual allegations in the Second Amended Complaint which, if proven true, would establish that the non-treating supervisory Defendants, in conscious disregard to an excessive risk to Plaintiff's health, were aware he was not receiving constitutionally adequate medical care. Rather, Plaintiff merely alleges these Defendants were aware, at most, that he disagreed with the diagnoses and treatment of the treating medical Defendants and they should have intervened. Because he has failed to plausibly allege he received constitutionally inadequate medical care, he has not stated a claim against the supervisory Defendants. *See Starr*, 652 F.3d at 1207 (allegations of an underlying constitutional violation and a connection between the supervisor's actions and the violation are required to state a claim); *Farmer*, 511 U.S. at 837 (the prison official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists [and] must also draw the inference.")

Plaintiff alleges the remaining Defendants, other than the CDCR, which include Zhang, Hofmeister, Brown, Waters, Gates, Palmer, Howard, Tung, Saidro and Martinez, along with the previously discussed Defendants Corleone, Chau, Casian, Luu, Guldseth, Santos, Mohamed, Sedighi, Silva, Sazon, Messler, Clayton, Glynn, Roberts, Hodges, Barenchi, Laufik, Pasha, Pollard, Diaz, Allison, Buckel, Madden, Foss, Gibson and Schultz, failed to provide or ensure he was provided adequate medical care. (*Id.* ¶¶ 27-40.) As with the supervisory Defendants, the allegations that these Defendants participated in the alleged deliberate indifference of the treating medical providers by failing to intervene when faced with Plaintiff's complaints that in his opinion he had been misdiagnosed, fail to plausibly allege an Eighth Amendment violation because Plaintiff has not plausibly alleged the treatment he received violated the Eighth Amendment. *See Estelle*, 429 U.S. at 106 (inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth

Amendment claim). Plaintiff has not plausibly alleged these Defendants were aware of facts from which an inference could be drawn that he faced a serious risk to his health and actually drew such an inference because he has not plausibly alleged he received unconstitutional medical care. *Farmer*, 511 U.S. at 837; *see also Johnson*, 588 F.2d at 743 ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.")

Accordingly, the Court *sua sponte* dismisses the Eighth Amendment claims in the Second Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A. *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678; *Farmer*, 511 U.S. at 837.

### 2. ADA Claim

Plaintiff alleges he made a "Reasonable Accommodation Request" in which he identified what "he is unable to do because of the serious back problem," and in which he requested steroid injections, an egg-crate mattress, a no full duty chrono, a high medical risk classification, a morphine prescription, and referral to an orthopedist. (ECF No. 16 ¶ 7.) He claims he is entitled to those reasonable accommodations under the ADA and that Defendant CDCR is liable for failing to provide them. (*Id.*)

In the Court's prior dismissal Order Plaintiff was informed that he was unable to state an ADA claim against an individual, the only Defendants named in the First Amended Complaint, and that the CDCR, who was not named as a Defendant, can only be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." (ECF No. 12 at 17, quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) and citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.").) Plaintiff has now added the CDCR as a Defendant in the Second Amended Complaint. (ECF No. 16 ¶ 7.)

To state a claim under Title II of the ADA, Plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007).

The Court informed Plaintiff in its prior dismissal Order that his allegations of disagreement with his medical treatment and discontinuation of his medication do not state an ADA claim. *See e.g. Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) (noting that the ADA does not set forth a standard of care for medical treatment), citing *Olmstead v. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not hold in this opinion that the ADA imposes on the States a 'standard of care' for whatever medical services they render . . .") Even if Plaintiff could overcome that defect, he has once again failed to cure another defect of pleading identified in the Court's prior dismissal Order, that the refusal to accommodate were taken because of his disability. (*See* ECF No. 12 at 19.) The Second Amended Complaint once again fails to allege facts from which a plausible inference could be drawn that Defendant CDCR's actions were taken "by reason of his disability" as opposed to a legitimate disagreement regarding his diagnosis and the proper course of treatment. *O'Guinn*, 502 F.3d at 1060.

The Court dismisses the ADA claim from the Second Amended Complaint *sua sponte* for failure to state a claim. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678.

### D. Plaintiff is Denied Further Leave to Amend

Because Plaintiff has previously been notified of the same pleading defects he has failed to cure in his Second Amended Complaint, and because it is now absolutely clear he cannot state a 42 U.S.C. § 1983 claim upon which relief may be granted, the dismissal of the Second Amended Complaint is with prejudice and without further leave to amend. *See*

*Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III.   Conclusion and Order

Good cause appearing, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Second Amended Complaint (ECF No. 16) pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted. The Clerk of Court will enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  June 9, 2022

Hon. Cathy Ann Bencivengo
United States District Judge